# No. 26-2017

# United States Court of Appeals
### FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA**,
*Plaintiff-Appellant*

*v.*

**KOMILJON TOIROV**,
*Defendant-Appellee*

On Appeal from the United States District Court
for the District of New Mexico
D.C. No. 25-cr-1801-SMD (The Hon. Sarah M. Davenport)

## OPENING BRIEF FOR THE UNITED STATES
### ORAL ARGUMENT IS REQUESTED

August 2026

TODD BLANCHE
  *Acting Attorney General*

RYAN ELLISON
  *First Assistant U.S. Attorney*
  *District of New Mexico*

EMIL J. KIEHNE
  *Assistant U.S. Attorney*
  201 3rd St. NW, Suite 900
  Albuquerque, NM  87102
  (505) 346-7274

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES ..........................................iii

PRIOR OR RELATED APPEALS ................................................................. vii

JURISDICTIONAL STATEMENT ................................................................. 1

ISSUE PRESENTED ...................................................................................... 1

STATEMENT OF THE CASE AND THE FACTS ............................................ 1

I. The New Mexico National Defense Area is created. ................................. 1

II. Toirov is charged with illegal entry into the United States and for violating the military-trespass statutes, but the district court dismisses the trespassing charges. ........................................................................ 3

SUMMARY OF THE ARGUMENT ................................................................ 7

ARGUMENT ................................................................................................. 8

I. An alien's intent to enter the United States without inspection satisfies the willfulness standard of Section 797. ................................................ 8

    A. The district court correctly concluded that Section 797's willfulness element does not require knowledge of the law. ........ 10

    B. The district court erroneously engrafted an atextual scienter element. ........................................................................................ 13

        1. *The statutory text embodies no scienter requirement as to the existence or provenance of a military installation.* ........ 13

        2. *A presumption of scienter is likewise inapposite because the NMNDA's status is a jurisdictional element.* ..................... 15

        3. *Because the willfulness element already distinguishes innocent from culpable conduct, no presumption of scienter is warranted.* ................................................................. 17

II. Entering the United States without inspection is a "purpose prohibited by law" that satisfies Section 1382's specific-intent standard. ............. 19

    A. The district court correctly determined that the government need not prove intent to trespass on military property where, as here, the defendant acted for an independent unlawful purpose......... 20

    B. The district court incorrectly engrafted an atextual scienter requirement as to restricted military status on top of the specific intent already required by Section 1382. ................................... 23

III. The United States did not invite error by moving to dismiss the trespass charges. .............................................................................. 25

CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT... 27

TYPE-VOLUME CERTIFICATION ............................................................. 29

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION ...................... 30

Attachments:

18 U.S.C. § 1382

50 U.S.C. § 797

Order Dismissing Charges (Doc. 4) entered by U.S. Magistrate Judge Gregory B. Wormuth.

Amended Order of Release (Doc. 37) entered by U.S. District Judge Sarah M. Davenport, adopting Judge Wormuth's reasoning.

Order Dismissing Counts 2 and 3 of the Information (Doc. 64)

# TABLE OF CASES AND OTHER AUTHORITIES

# TABLE OF CASES

**PAGE**

Cases

*Bryan v. United States,*
524 U.S. 184 (1998) ...............................................8, 10-14, 18-19

*Cheek v. United States,*
498 U.S. 192 (1991) ............................................................. 11-12

*Elonis v. United States,*
575 U.S. 723 (2015) ..................................................................... 23

*Liparota v. United States,*
471 U.S. 419 (1985) ..................................................................... 19

*Ratzlaf v. United States,*
510 U.S. 135 (1994) ............................................................. 11-12

*Rehaif v. United States,*
588 U.S. 225 (2019) ..................................................................... 18

*Torres* v. *Lynch,*
578 U.S. 452 (2016) ..................................................................... 15

*United States v. Benton,*
988 F.3d 1231 (10th Cir. 2021) ........................................... 10, 13

*United States v. Burson,*
952 F.2d 1196 (10th Cir. 1991) ................................................. 25

*United States v. Cottier,*
759 F.2d 760 (9th Cir. 1985) ..................................................... 22

*United States v. Deberry,*
430 F.3d 1294 (10th Cir. 2005) ............................................ 25-27

*United States v. Evans,*
74 F.4th 597 (4th Cir. 2023) ........................................................... 14

*United States v. Feola,*
420 U.S. 671 (1975) .............................................................. 15-17, 23

*United States v. Floyd,*
477 F.2d 217 (10th Cir. 1973) ........................................................ 21

*United States v. Hall,*
742 F.2d 1153 (9th Cir. 1984) ........................................................ 22

*United States v. Joseph,*
530 F. App'x 911 (11th Cir. 2013)................................................... 10

*United States v. Martinez-Morel,*
118 F.3d 710 (10th Cir. 1997) ........................................................ 11

*United States v. Parrilla Bonilla,*
648 F.2d 1373 (1st Cir. 1981) ........................................................ 21

*United States v. Procter & Gamble Co.,*
356 U.S. 677 (1958) ..................................................................... 27

*United States v. Warner,*
131 F.4th 1137 (10th Cir. 2025) ................................................... 9, 20

*United States v. Wyatt,*
964 F.3d 947 (10th Cir. 2020) .................................................... 10, 19

*West Virginia Univ. Hospitals, Inc. v. Casey,*
499 U.S. 83 (1991) ....................................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

<u>Statutes</u>

8 U.S.C. § 1325 .................................................................................... 12

8 U.S.C. § 1325(a)(1) ...................................................................... 3-4, 12

18 U.S.C. § 111 ................................................................................... 15

18 U.S.C. § 922(a)(1)(A) ..................................................................... 14

18 U.S.C. § 1382 ...................................... vi-vii, 1, 3, 5-8 12, 19, 21-24

18 U.S.C. § 1855 ................................................................................. 14

18 U.S.C. § 3141 .................................................................................. vi

18 U.S.C. § 3142 .................................................................................. vi

18 U.S.C. § 3231 ................................................................................... 1

18 U.S.C. § 3731 ................................................................................... 1

50 U.S.C. § 797 ......................................... vi-vii, 1, 3, 5-14, 17-20, 23

50 U.S.C. § 797(a) ......................................................................... 14, 19

50 U.S.C. § 797(a)(1) ...................................................................... vi, 8-9

50 U.S.C. § 797(b) .............................................................................. 19


<u>Rules</u>

Federal Rule of Criminal Procedure 48(a) ........................................... 6

<u>Other</u>

Memorandum on the Military Mission for Sealing the Southern Border of the United States and Repelling Invasions, 2025 Daily Comp. Pres. Doc. 471 (Apr. 11, 2025) ...................................................................................... 2

Proclamation No. 758, 35 Stat. 2136 (May 27, 1907) ....................................... 2

Public Land Order No. 7963, 90 Fed. Reg. 16698 (April 21, 2025) ................... 2

U.S. Army, ATZS-CG (600-20), *Memorandum for Record: Designation of the New Mexico Withdrawn Lands to the United States Army Garrison, Fort Huachuca, as a Restricted Area and Delegation of Authority to Commander*, USNORTHCOM (Apr. 18, 2025). ............................................................. 2-3

# PRIOR OR RELATED APPEALS

This case comes before the Court a third time. In the first appeal, Tenth Circuit No. 25-2074 ("*Toirov I*"), the government appealed an order releasing Defendant Komiljon Toirov from custody under the Bail Reform Act (18 U.S.C. § 3141 *et seq*.) pending his trial on two military-trespass charges: 50 U.S.C. § 797 and 18 U.S.C. § 1382. The district court's order was premised on its understanding that these statutes required proof the government contended it did not need but conceded it did not have: that when Toirov crossed the border from Mexico into the United States and the New Mexico National Defense Area (NMNDA), he did so knowing that he was entering restricted military property. 1App.48;[1] 2App.45. This Court initially remanded the matter to the district court "for the limited purpose of entering alternative 18 U.S.C. § 3142 findings under the assumption that the government's interpretation of 18 U.S.C. § 1382 and 50 U.S.C. § 797(a)(1) is correct." 1App.51.

The district court complied and entered alternative findings that if no proof was needed that Toirov knew the land's restricted status, the district court would have detained him. 1App.55-56.

---

[1] All citations to "App." are to the Appellant's Appendix, preceded by the volume number and followed by the Appendix page number at the bottom of each page.

Following that clarification, a divided panel vacated the release order and remanded for further consideration. 1App.59-65. The majority concluded it was error to "treat[] the answer to the statutory-interpretation question (*i.e.*, the state of mind required to violate 18 U.S.C. § 1382 and 50 U.S.C. § 797) as essentially dispositive" of Toirov's eligibility for release. 1App.59-60. "In particular," the majority said, "the district court failed to consider whether the defendant is a flight risk even if the statutory-interpretation question is resolved in his favor." *Id.* The majority did not resolve the statutory-interpretation question. *Id.*

On remand, the district court reaffirmed its release order. 1App.66-71. The district court again relied heavily on its view that the government's legal theory is incorrect. *Id.* It concluded, for example, that Toirov presents little flight risk because he will likely be acquitted at trial. *Id.* at 68-69.

The government appealed a second time, Tenth Circuit No. 25-2109 ("*Toirov II*"), and again argued that the district court's interpretation of the *mens rea* elements was erroneous. 4App.4-33. This Court declined to reach that issue but affirmed on the basis that the government had failed to show that Toirov was a flight risk. 4App.66-69.

<h1 style="text-align:center">JURISDICTIONAL STATEMENT</h1>

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. This Court has jurisdiction to review the district court's dismissal order because this is an appeal "[i]n a criminal case … by the United States … to a court of appeals from a decision, judgment, or order of a district court dismissing an … information … as to any one or more counts, or any part thereof …." 18 U.S.C. § 3731.

This appeal is timely. The district court entered its order dismissing Counts 2 and 3 of the Information on January 21, 2026. 1App.77. The government filed its notice of appeal on February 18, 2026. *Id.* at 78-79; *see* 18 U.S.C. § 3731 (providing that the government's appeal from an order dismissing counts in an information must "be taken within thirty days after the decision, judgment or order has been rendered….").

<h1 style="text-align:center">ISSUE PRESENTED</h1>

Do the military-trespass statutes—18 U.S.C. § 1382 and 50 U.S.C. § 797—require the government to prove that the defendant knew of the land's restricted military status?

<h1 style="text-align:center">STATEMENT OF THE CASE AND THE FACTS</h1>

**I.      The New Mexico National Defense Area is created.**

In 1907, President Theodore Roosevelt determined that it was "necessary for the public welfare that a strip of land lying along the boundary

1

line between the United States and the Republic of Mexico be reserved … as a protection against the smuggling of goods between the United States and said Republic." 35 Stat. 2136. For more than a century, the resulting "Roosevelt Reservation" has served as a defensive bulwark against the unlawful trafficking of persons and contraband into the United States.

In 2025, the President of the United States determined that "[o]ur southern border is under attack from a variety of threats" and "[t]he complexity of the current situation requires that our military take a more direct role in securing our southern border than in the recent past." The White House, *Military Mission for Sealing the Southern Border of the United States and Repelling Invasions* (Apr. 11, 2025).[2] Accordingly, in April 2025, the President directed the Department of the Interior to transfer the Roosevelt Reservation to the Department of Defense, which has now incorporated it—as the New Mexico National Defense Area (NMNDA)—into the U.S. Army Fort Huachuca installation. *Id.*; *see* Public Land Order No. 7963.[3] The same day, Fort Huachuca's commander issued a security

---

[2] https://www.whitehouse.gov/presidential-actions/2025/04/military-mission-for-sealing-the-southern-border-of-the-united-states-and-repelling-invasions/ (viewed July 29, 2026).

[3] https://www.federalregister.gov/documents/2025/04/21/2025-06827/public-land-order-no-7963-national-defense-operating-area-withdrawal-dona-ana-luna-and-hidalgo (viewed July 29, 2026).

regulation designating the NMNDA as a restricted and controlled area under Army Regulation 190-13, which prohibits unauthorized entry onto such areas.[4]

## II. Toirov is charged with illegal entry into the United States and for violating the military-trespass statutes, but the district court dismisses the trespassing charges.

On the evening of May 4, 2025, Border Patrol agents received an alert from the NMNDA, several miles east of the Santa Teresa Port of Entry. 1App.12. Agents responded to the area and discovered several people, including Toirov, hiding in nearby brush. *Id.* at 33. Toirov admitted that he was a citizen of Uzbekistan and that he had just entered the country unlawfully. *Id.* at 12, 33-34. He was charged by complaint with violating 8 U.S.C. § 1325(a)(1) (entry without inspection), 50 U.S.C. § 797 (willfully violating a defense property security regulation) and 18 U.S.C. § 1382 (unlawfully entering a military reservation). 1App.11-13.

Toirov's arrest was one of many made in the NMNDA in late spring 2025. The military-trespass charges prompted Chief Magistrate Judge Gregory Wormuth to open a miscellaneous matter (25-MC-19) and order the government to assert "its position as to the appropriate mens rea standard for both statutes." 3App.2-3. In response, the government contended that

---

[4] https://home.army.mil/huachuca/1717/5287/4119/NMNDA_security_and_SC_delegation_MFR-signed_18APR25.pdf (viewed July 29, 2026).

3

both statutes could be satisfied by proving that the defendant acted with a culpable purpose, which could be proven by showing that the defendant crossed into the country in deliberate contravention of law. 3App.4-17.

Judge Wormuth disagreed and entered an order in Toirov's case (and others) concluding that both statutes require awareness of the land's restricted military status. 1App.14-29. Because the complaint did not support that *mens rea*, Judge Wormuth dismissed the military-trespass charges. *Id.* at 29.

The government subsequently filed an information charging Toirov with the same three offenses contained in the complaint. 1App.30-31. Toirov pleaded guilty to the § 1325 charge before a magistrate judge. 1App.3-4 (docket entry 8). That judge sentenced Toirov to time served on the illegal-entry charge, *id.*, and ordered his release pending trial on the military-trespass charges. 1App.4 (docket entry 9). The United States appealed that release order to the district court. 1App.32.

In briefing, the government argued that Toirov should be detained as a flight risk, 1App.33, 36, and that under a correct view of the *mens rea* requirements, the evidence in support of the military-trespass charges was strong. *Id.* at 36-38.

The district court held a hearing on detention. The hearing focused on the weight of the evidence against Toirov, and in particular on the *mens rea*

4

showing required by § 797 and § 1382. 2App.11-67; *id.* at 14 (court remarking that "the real issue here is the weight of the evidence"); *id.* at 15. The government acknowledged that it could not prove that Toirov knew he was entering a restricted military area but argued that such proof was not necessary. *Id.* at 24-27, 29. At the hearing's conclusion, the district court ruled that both statutes require proof that the defendant knew he was "entering… some kind of military restricted area," *id.* at 49; in reaching that conclusion, it expressly "adopt[ed]" Judge Wormuth's view, *id.* at 50; 1App.47. The court then concluded that "the weight of the evidence" against Toirov was "not strong" because the government could not prove Toirov knew the land he had entered was a military reservation. 2App.51. Accordingly, it affirmed the release order. 1App.47-48.

The government appealed to this Court. 1App.49-50. As described above, in *Toirov I* this Court did not reach the statutory interpretation issue presented by the government. That appeal ultimately resulted in the district court's issuance of an amended release order reaffirming that Toirov was not a flight risk because, in its view, the government's evidence was weak under the court's reading of the *mens rea* elements. 1App.68-69. The district court said that the weight of the evidence on the trespassing charges "is fatally flawed" and that the government's argument on the *mens rea* elements was "wholly unpersuasive[.]" *Id.* at 69. The court noted that "[t]he government

concedes that it cannot convict if the Court's version of the elements is correct." *Id.* The court said it would not order a defendant to be detained "when all parties agree, as the government does by their concession, that the outcome of the case is likely an acquittal." *Id.* at 70.

The district court also held a status conference. Defense counsel said that Toirov intended to proceed to trial. 2App.70. The district court said that it continued to adhere to Judge Wormuth's analysis of the *mens rea* elements and intended to instruct the jury accordingly. 2App.71. The government again stated that it could not satisfy the *mens rea* elements under the district court's interpretation. *Id.*

The government appealed from the amended release order. 1App.72-73. In its memorandum brief, the government asked this Court to reverse the district court's interpretation of the *mens rea* elements. 4App.4-33. This Court declined to reach the statutory-interpretation issue and affirmed on the basis that the government had failed to show that Toirov was a flight risk. *Id.* at 66-69.

On remand, the district court set a jury trial for late January 2026. 1App.74. A few days before trial, the government filed a motion under Federal Rule of Criminal Procedure 48(a) asking the district court to dismiss the trespassing counts if it "still maintains its previously expressed interpretation of 50 U.S.C. § 797 and 18 U.S.C. § 1382[.]" 1App.76, ¶ 5. The

6

district court granted the government's motion and dismissed those counts without prejudice. *Id.* at 77. The government appeals. *Id.* at 78-79.

**SUMMARY OF THE ARGUMENT**

Unsurprisingly, persons are not free to enter a U.S. Army installation without authorization. Equally unsurprisingly, doing so with culpable intent exposes the trespassers to criminal liability. Congress has enacted multiple statutes safeguarding the physical integrity of military areas and punishing those who would breach it. *See, e.g.*, 50 U.S.C. § 797 (subjecting to misdemeanor penalties "[w]hoever willfully violates any defense property security regulation"); 18 U.S.C. § 1382 (subjecting to misdemeanor penalties "[w]hoever … goes upon any military … installation, for any purpose prohibited by law").

Toirov—an alien who entered both the United States and the NMNDA without authorization—argues that he did not violate these laws because he was not aware of the NMNDA's reassignment to the Department of Defense or the area's resulting status. The district court should have rejected his argument.

*First*, "willful[ness]," as used in Section 797, requires only that the defendant have acted with a culpable purpose—not awareness of the specific reason his conduct is proscribed. Here, Toirov necessarily acted with such a purpose by crossing into the United States in deliberate contravention of law.

7

He therefore acted "willfully." *See Bryan v. United States*, 524 U.S. 184, 191-93 (1998).

*Second*, entry into the United States without inspection fits comfortably within the capacious phrase "any purpose prohibited by law" so as to satisfy Section 1382.

*Third*, no reason exists to impose a heightened *mens rea* beyond those enacted in Sections 797 and 1382. By restricting liability to willful acts for unlawful purposes, Congress has obviated any risk of ensnaring unsuspecting innocents. Aliens who enter the country without authorization—like others who violate regulations with a culpable intent or for an illegal purpose—do not warrant the protection of an atextual standard.

## ARGUMENT

### I. An alien's intent to enter the United States without inspection satisfies the willfulness standard of Section 797.

Section 797(a)(1) prescribes misdemeanor penalties for anyone who "willfully violates any defense property security regulation." A "willfulness requirement … does not carve out an exception to the traditional rule that ignorance of the law is no excuse[.]" *Bryan*, 524 U.S. at 196. Rather, a defendant who enters the country and the NMNDA not through a designated port of entry—and knows that such conduct is unlawful because it constitutes an unlawful entry into the United States itself—has violated Section 797 by

8

"willfully violat[ing]" the military regulation that prevents unauthorized

NMNDA entries. To convict a defendant under these circumstances, the

government must show:

(1)  The defendant knowingly and voluntarily entered the United States from Mexico through an area that is not a designated port of entry.

(2)  The defendant knew that, by entering the United States in that manner, he was acting unlawfully.

(3)  When entering the United States from Mexico through an area that is not a designated port of entry, the defendant also entered upon the NMNDA military installation.

(4)  The NMNDA is regulated by a "defense property security regulation" that precludes unauthorized entry upon the NMNDA.

(5)  The defendant was not authorized to enter the NMNDA.

*See* 50 U.S.C. § 797(a)(1).

The district court's determination that the statute requires knowledge

that the defendant knew he was entering a restricted military area

contravenes both the text of Section 797 and the background legal principles

against which it was enacted.

This Court reviews issues of statutory interpretation de novo. *United*

*States v. Warner*, 131 F.4th 1137, 1145 (10th Cir. 2025).

**A. The district court correctly concluded that Section 797's willfulness element does not require knowledge of the law.**

We begin on common ground. The district court correctly determined that the form of willfulness required under Section 797—"knowledge that the conduct is unlawful"—"can be sufficiently shown by [Toirov]'s simultaneous illegal entry into the United States." 1App.18-20.

Generally, "[t]he term 'willfully' … [only] requires proof the defendant 'acted with knowledge that his conduct was unlawful.'" *United States v. Benton*, 988 F.3d 1231, 1238 (10th Cir. 2021) (quoting *Bryan*, 524 U.S. at 193). In such cases, "[t]he government need not show … that the defendant was aware of the particular statute he was violating." *United States v. Joseph*, 530 F. App'x 911, 919 (11th Cir. 2013) (citing *Bryan*, 524 U.S. at 196). The government must show only that the defendant knew he was doing "*something* that was unlawful." *United States v. Wyatt*, 964 F.3d 947, 958 (10th Cir. 2020) (emphasis added). Accordingly, "when used in the criminal context, a 'willful' act" follows "the traditional rule that ignorance of the law is no excuse." *Bryan*, 524 U.S. at 191-95.

"[A]n exception to [this] traditional rule" exists for "highly technical statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan*, 524 U.S. at 194. For example, in "certain cases involving willful violations of the tax laws," the Supreme Court

has required "the jury [to] find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Id.* (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)). The same holds for "structuring of cash transactions to avoid a reporting requirement," which likewise subjects to liability "apparently innocent conduct." *Id.* (citing *Ratzlaf v. United States*, 510 U.S. 135, 138, 149 (1994)). But in all such cases, it is "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated" the extension of *mens rea* beyond its traditional bounds. *Id.* at 195. Where no such risk is present because the defendant "knew that his conduct was unlawful," no such heightened *mens rea* attaches.

Section 797 does not fit within *Bryan*'s exception for "'highly technical statutes.'" 1App.17-18. A defendant who knows that he is acting unlawfully need not grasp every reason why his conduct is unlawful—*e.g.*, the existence or details of the "defense property security regulation" he is violating. The inapplicability of the rationale for the "'highly technical statute'" carveout— "the danger of ensnaring individuals engaged in apparently innocent conduct," *Bryan*, 524 U.S. at 194—is well illustrated by those whose unlawful entry into the NMNDA was simultaneous to their unlawful entry into the United States. Such conduct cannot be deemed "apparently innocent." *See*, *e.g.*, *United States v. Martinez-Morel*, 118 F.3d 710, 716 (10th Cir. 1997)

11

("Entering a country in violation of its immigration laws is not 'otherwise innocent conduct.'") (citations omitted).

Virtually all aliens who enter the NMNDA are not "engaged in apparently innocent conduct." By definition, such individuals have "enter[ed] the United States at … [a] place … [not] designated by immigration officers." 8 U.S.C. § 1325(a)(1). Because such unauthorized entries are generally "undertaken with a 'bad purpose'"—namely, the purpose of violating the Nation's immigration laws and avoiding detection and interdiction by law enforcement—"[t]he danger of convicting individuals" for unauthorized NMNDA entries due to "apparently innocent conduct" is vanishingly low.[5] *Bryan*, 524 U.S. at 194. The district court therefore appropriately construed Section 797 to require general *Bryan* willfulness rather than the heightened *Cheek*/*Ratzlaf* willfulness reserved for "highly technical statutes," and correctly recognized that the allegations in the complaint satisfied the former standard.

---

[5] This does not mean, however, that Section 1325 and Section 797 (or Section 1382) are satisfied by an identical *mens rea* showing. Section 1325 requires the intent to enter the United States but not knowledge of unlawfulness. 2App.29 (prosecutor emphasizing need for knowledge of unlawfulness in military-trespass charges); *cf. id.* at 29-30 (court suggesting that military-trespass charges "piggyback" on a Section 1325 offense).

## B. The district court erroneously engrafted an atextual scienter element.

The district court erred, however, in requiring an additional element of "knowledge that the defendant has entered the NMNDA." 1App.22. That atextual scienter element disregards Congress's selection of a willfulness *mens rea* and effectively requires the technical regulatory knowledge deemed irrelevant for this category of offenses under *Bryan* and its progeny.

### 1. *The statutory text embodies no scienter requirement as to the existence or provenance of a military installation.*

"The mental state sufficient for commission of a federal criminal offense is a question of congressional intent," *Benton*, 988 F.3d at 1238, and "[t]he best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 98 (1991). Nowhere does Section 797 require that the defendant have "known" that he was entering military property. The statute requires only that the defendant have acted "willfully," which—as the court correctly determined—the government may satisfy by showing his culpable purpose of entering the United States without inspection.

In concluding otherwise, the court appeared to reason—relying on *Bryan*—that Section 797's willfulness *mens rea* requires knowledge of all "the facts that constitute th[e] offense"; thus, because one of those facts is entry upon the NMNDA, the defendant must know he had entered the NMNDA.

1App.22-23. But that cannot be correct. The existence of the "defense property security regulation" is also among the facts constituting the offense, 50 U.S.C. § 797(a), and the court recognized that knowledge of that regulation is unnecessary. 1App.18.

Indeed, *Bryan* itself rejects the district court's line of reasoning. There, one of the central facts constituting the defendant's offense was his lack of a federal firearms license. *See* 524 U.S. at 189; 18 U.S.C. § 922(a)(1)(A) (prohibiting anyone "except a licensed importer, licensed manufacturer, or licensed dealer" from dealing in firearms). The Supreme Court held, however, that the willfulness *mens rea* did not require awareness of the federal licensing requirement; the defendant only had to be aware that his conduct was unlawful more generally. *See Bryan*, 524 U.S. at 196; *see also id.* at 189 & n.8. Although Section 797's willfulness *mens rea* is more demanding than knowledge in the sense that it requires awareness of unlawfulness, it does not require knowledge of each factual component of the offense. *Cf., e.g., United States v. Evans*, 74 F.4th 597, 606-07 (4th Cir. 2023) (holding that a statute prohibiting "willfully and without authority, set[ting] on fire any timber, underbrush, or grass or other inflammable material" on federal land, 18 U.S.C. § 1855, does not require knowledge that the location of the fire is federal land).

14

2. *A presumption of scienter is likewise inapposite because the NMNDA's status is a jurisdictional element.*

The district court's analysis appears to be grounded in part in the "presumption of scienter." 1App.21. The court acknowledged, however, that the presumption of scienter does not apply to "a statute's 'jurisdictional elements.'" *Id.* And it recognized that certain legal characteristics of the area onto which Toirov trespassed—that it was "military property with a security regulation"—were "the jurisdictional prerequisites to the crime." 1App.17. But the court nevertheless extended the presumption of scienter to those "jurisdictional prerequisites," at least to the extent that the government must prove Toirov's "knowledge that [he] has entered the NMNDA." *Id.* at 22. Because the legal status of his entry point as a National Defense Area is jurisdictional, however, any scienter element would not reach that fact. *See Torres* v. *Lynch*, 578 U.S. 452, 468 (2016) ("[W]hen Congress has said nothing about the mental state pertaining to a jurisdictional element, … [c]ourts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea* requirement.").

In that sense, this case is similar to *United States v. Feola*, 420 U.S. 671 (1975), in which the Supreme Court held that the federal statute penalizing assault on a federal officer, 18 U.S.C. § 111, "cannot be construed as embodying an unexpressed requirement that an assailant be aware that

15

his victim is a federal officer." *Feola*, 420 U.S. at 684. There, as here, Congress enacted the relevant provision "to protect both federal officers and federal functions" and to "provid[e] a federal forum" for vindicating those interests. *Id.* at 679, 682. There, as here, liability depended in part on the special governmental status (there, a "federal officer," *id.* at 684; here, a "military property with a security regulation," 1App.17) carried by the object of the offense. And there, the Supreme Court deemed that special status "jurisdictional" and held that "knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction[.]" *Feola*, 420 at 676, 697; *see also id.* at 694 ("[I]mposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve the policy behind the law … without serving any other apparent social policy.").

This case is like *Feola* in another respect as well: Regardless of his knowledge of any jurisdictional fact, the defendant could be found guilty only if he acted with a culpable purpose. Just like Toirov, the defendant in *Feola* was engaged in unambiguously culpable conduct (there, assault; here, unlawful entry into the United States) but nevertheless sought to evade criminal liability on the basis of his asserted ignorance as to the special-status element. And there, the Court explained that its "interpretation poses

no risk of unfairness to defendants" and "is no snare for the unsuspecting" because

> [a]lthough the perpetrator … may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

*Id.* at 685. So too here: Although Toirov "may [have] be[en] surprised to find" that he had illegally crossed into military rather than civilian territory, he knew "from the very outset that his planned course of conduct [wa]s wrongful." In deliberately entering the United States outside of a port of entry established for that purpose, Toirov must "take[] his [destination] as he finds [it]" and face the consequences of his "willful[]" conduct.

> 3. *Because the willfulness element already distinguishes innocent from culpable conduct, no presumption of scienter is warranted.*

In any event, a *presumption* is just that—an assumption about general practice contingent on certain facts and rebuttable by contrary indicia. Here, Congress's explicit choice of "willful[ness]" in Section 797 overrides any implicit scienter element that might otherwise be inferred.

17

Moreover, as the Supreme Court has instructed, the presumption of scienter operates only insofar as necessary "to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize *otherwise innocent conduct*.'" *Rehaif v. United States*, 588 U.S. 225, 229 (2019) (emphasis added) (citations omitted). Additional knowledge— *i.e.*, about the full contours of and legal rationale for his offense—is not necessary for a defendant who both acts unlawfully and does so "willfully," or for a "bad purpose." *Bryan*, 524 U.S. at 191. When he entered the country without authorization or inspection, Toirov was not engaged in "otherwise innocent conduct," *Rehaif*, 588 U.S. at 229—nor, by definition, would any other defendant who has engaged in a "willful[]" violation of law.

The district court correctly determined that Toirov's "intent to illegally enter the United States can satisfy the 'willfully' requirement that Defendant knew that his conduct was unlawful under 50 U.S.C. § 797." But it erroneously concluded that a presumed scienter element as to the status of the NMNDA was necessary to shield this *willfully culpable* defendant from liability for "otherwise innocent conduct." 1App.22-23. Imposing an additional scienter element here fails to serve the interest that undergirds the scienter presumption.

In all events, Toirov's understanding that he had entered an area where he was not authorized to be present satisfies scienter even without his

subjective appreciation of each *reason* that his presence was unauthorized.

Just as the defendant in *Liparota v. United States*, 471 U.S. 419 (1985), was

liable for food-stamp fraud—notwithstanding his ignorance as to the specific

underlying regulations—because he knew, as a general matter, that his

conduct "was unauthorized," *id.* at 434, Toirov is liable for violating Section

797—notwithstanding his ignorance of the relevant "defense property

security regulation"—because he knew that his conduct was unauthorized.[6]

The court's contrary determination cannot be squared with this foundational

principle of *mens rea* jurisprudence.

## II.    Entering the United States without inspection is a "purpose prohibited by law" that satisfies Section 1382's specific-intent standard.

Section 1382 prescribes misdemeanor penalties for, *inter alia*,

"[w]hoever, within the jurisdiction of the United States, goes upon any

---

[6] The court also placed undue emphasis (1App.22-23) on the separate requirement in Section 797(b)—distinct from the "misdemeanor violation" set forth in Section 797(a)—that the "regulation … be posted in conspicuous and appropriate places."  As noted, the statute does not impose any precondition of actual or constructive notice before imposing criminal liability. Moreover, aliens who enter New Mexico from Mexico outside of a port of entry do not need a sign to tell them that they are doing "something that [is] unlawful." *Wyatt*, 964 F.3d at 958. And even assuming that such aliens had taken the time to read and understand the government's postings, their principal "bad purpose," *Bryan*, 524 U.S. at 191—entering the country unlawfully—would be unchanged. In short, Congress did not add an additional *mens rea* requirement to the offense set forth in subsection (a) through the roundabout means of subsection (b)'s separate posting provision.

military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation." The district court correctly determined that a defendant who enters the NMNDA from Mexico *for the prohibited purpose* of entering the United States without inspection has violated the plain text of this provision. 1App.24-25. But the court again proceeded to engraft an atextual scienter element onto the "military" status of the site. *Id.* at 25-29. For largely the same reasons already discussed in the context of its faulty Section 797 analysis, the court erred in disregarding Congress's choices, presuming a scienter requirement more stringent than the one that Congress prescribed where none was necessary to distinguish innocent from culpable conduct, and applying this atextual scienter requirement to a jurisdictional element.

This Court reviews issues of statutory interpretation de novo. *Warner*, 131 F.4th at 1145.

### A. The district court correctly determined that the government need not prove intent to trespass on military property where, as here, the defendant acted for an independent unlawful purpose.

As a threshold matter, the district court correctly determined that "the Complaint establishes probable cause to believe that [Toirov]'s entry and presence in the NMNDA was for [the] unlawful purpose" of "illegally entering the United States" and "elud[ing] any examination." 1App.25.

A defendant violates the relevant paragraph of Section 1382 when he "goes upon" military land—restricted or not—for "*any* purpose" that is unlawful. 18 U.S.C. § 1382 (emphasis added). This would include, of course, some purposes that might have a specific military connection, such as interfering with the military's operation. But it would also reach other prohibited purposes that are not limited to military installations, such as trafficking contraband. When a defendant has such intent to commit an independent crime, he will have a "purpose prohibited by law or lawful regulation," regardless of his knowledge of the land's status.

In some cases, a defendant "goes upon" a military base without authorization without a purpose to commit a crime thereafter. In such cases, the only potential "purpose prohibited by law or lawful regulation" would be the unlawful entry itself, and the government would need to show that the defendant knew he was entering a restricted military zone. As the First Circuit has explained, "when a section 1382 prosecution proceeds on the basis that the defendant has entered a restricted military reservation 'for the purpose of' unauthorized entry, we think it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited." *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir. 1981) (citations omitted); *see also, e.g., United States v. Floyd*, 477 F.2d 217, 224 (10th Cir. 1973) ("The important fact is that the regulation prohibited entry to certain

21

persons. It becomes a matter of proof as to whether the Defendants were such persons and intended to enter the base knowing that they were so prohibited."); *United States v. Hall*, 742 F.2d 1153, 1154-55 (9th Cir. 1984) ("The prohibited purpose may be the unauthorized entry itself … Thus, going upon a military base with knowledge that such entry is unauthorized violates the statute.") (citations omitted). Without such knowledge, a defendant is not acting "for a purpose prohibited by law or lawful regulation," 18 U.S.C. § 1382—he is just innocently traveling onto military land with no culpable mindset. *See United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985) ("The importance of this knowledge arises in that only innocent trespassers are excluded from purview of 18 U.S.C. § 1382.").

Here, the district court correctly determined that Toirov's case does not involve a charge where unauthorized entry into a military installation is itself the unlawful purpose with which the defendant is alleged to have acted. 1App.24-25. Instead, as alleged, Toirov "entered the NMNDA in the process of illegally entering the United States at a place quite distant from the nearest Port of Entry" and did so "intending to elude [the] examination" required by law. *Id.* at 24. That is a purpose "prohibited by law" separate from the regulation prohibiting Toirov's entry into the NMNDA military installation.

**B.** **The district court incorrectly engrafted an atextual scienter requirement as to restricted military status on top of the specific intent already required by Section 1382.**

The inquiry should have stopped there. As was the case under Section 797, however, the court went further and applied "the presumption of scienter" to the "going upon the military property" element. 1App.26. That was error.

Like Section 797's requirement of "willful[]" conduct, Section 1382's express intent standard already "separate[s] wrongful conduct from 'otherwise innocent conduct.'" *Elonis v. United States*, 575 U.S. 723, 736 (2015) (citations omitted). Simply put, no one who "goes upon a[] military … installation[] for a[] purpose prohibited by law," 18 U.S.C. § 1382, can claim that he was engaged in "otherwise innocent conduct." And in cases where the "purpose prohibited by law" is a further crime that does not itself depend on the military status of the land, the military status of the site serves only to confer federal jurisdiction; it does not create the "wrongful[ness]" of the defendant's conduct. *See Feola*, 420 U.S. at 691 (distinguishing government's burden in cases where "the underlying offense involved an act clearly wrongful in itself" from cases where "the acts agreed to were wrongful solely because of statutory proscription") (citation omitted).

The court nonetheless adopted an additional knowledge-of-land-status element, on the theory that doing so was necessary to avoid a purported

23

"absurdity." Specifically, it posited a motorist "driving along … a road [that passes through a military base] intending to commit a crime in the next town" and suggested that such a person "would be guilty of an 18 U.S.C. § 1382 crime by the government's logic…even if they never committed the crime when they arrived at the next town and thus had never engaged in any knowingly culpable conduct." 1App.27. The court could not abide "[t]he absurdity of such a result." *Id.*

That reasoning is unsound. There is nothing "absurd" about imposing liability on someone who undertakes an action—even a preliminary or inchoate one—"for a[] purpose prohibited by law." And it is not necessary for this Court to definitively determine that Section 1382 reaches all persons who—knowingly or not—merely *traverse* a military installation *en route* to a future crime. The word "for" in Section 1382 could connote an instrumental rather than incidental relationship between the defendant's entry and his unlawful purpose. But that reading encompasses defendants like Toirov, so this case does not implicate the feared absurdity. Nor does it suggest the government could necessarily prosecute someone for merely "step[ping] on land he does not know is part of [a] base … without having any culpable intent," 1App.28; an unlawful purpose is necessary under Section 1382.

24

### III. The United States did not invite error by moving to dismiss the trespass charges.

Toirov may argue, as an alternative ground for affirmance, that even if the district court's interpretation of the *mens rea* needed to support conviction of Counts 2 and 3 was erroneous, the government invited error by moving for dismissal of those counts. Such an argument would lack merit.

The invited-error doctrine "prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991) (citations omitted). "In other words, the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005).

The invited-error doctrine does not apply here. The government did not induce the district court to "adopt[…] a proposition" that it now claims is erroneous. *Deberry*, 430 F.3d at 1302. The government consistently and repeatedly argued that the district court's view of the *mens rea* elements was erroneous. And in this appeal, the government is still arguing that the district court's interpretation of those elements was wrong.

The government moved to dismiss Counts 2 and 3 not because it had a change of heart on the legal issue, but rather to obtain appellate review of the *mens rea* elements that would otherwise have remained unavailable.

This Court approved a similar procedure in *Deberry*. There, the defendants alleged that the government had engaged in selective prosecution and the district court granted their request to conduct discovery. 430 F.3d at 1297-98. The government believed that the district court's discovery order was erroneous and asked the district court to dismiss the indictment so that it could appeal. *Id.* at 1298. The district court did so, and on appeal the defendants argued that the invited-error doctrine precluded the government from challenging the dismissal, because "even if the district court's discovery order was erroneous it dismissed the indictment at the government's urging[.]" *Id.* at 1301.

This Court rejected the defendants' argument, saying that they had "misconceive[d] invited error." *Deberry*, 430 F.3d at 1301-02. The "invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt," but the Court said "[t]hat is not what happened here." *Id.* at 1302. "The government is not arguing that dismissal of an indictment is an inappropriate sanction for defiance of a discovery order. Rather, it is arguing before us, as it did below, that the discovery order was improper." *Id.* This

26

Court noted that the case was "indistinguishable" from the Supreme Court's decision in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 680-81 (1958), which held that the government "could appeal a judgment dismissing its civil antitrust suit for refusal to disclose grand jury materials even though the government had requested a dismissal after the district court ordered disclosure." *Deberry*, 430 F.3d at 1302 (citation omitted).

The same analysis applies here. The district court entered orders stating that under its interpretation of the military-trespass statutes, the government would need to prove that Toirov knew of the land's restricted status. Because the government lacks any such evidence, the district court's ruling—which the government has always disputed—effectively prevents the prosecution from proceeding. On appeal, the government is not arguing that a pretrial dismissal is an inappropriate remedy where it lacks sufficient evidence to prove an essential element of an offense. Rather, the government is arguing that the district court's interpretation of the proof required to establish that essential element is incorrect.

## CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT

The United States respectfully requests that this Court hold that Counts 2 and 3 of the Information do not require the government to prove that Toirov had knowledge of the military nature of the area that he entered;

reverse the district court's order dismissing those counts; and remand for trial.

The United States requests oral argument because this Court has not previously considered the proper interpretation of the *mens rea* requirements of the military-trespass statutes.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant U.S. Attorney

*s/ Emil J. Kiehne*

EMIL J. KIEHNE
Assistant U.S. Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
emil.kiehne@usdoj.gov

## TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief contains 6,475 words. I relied on my word processor to obtain the count. My word processing software is Word for Microsoft 365.

*s/ Emil J. Kiehne*
EMIL J. KIEHNE
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on August 6, 2026.

I ALSO CERTIFY that Amanda Skinner, attorney for Defendant-Appellee Komiljon Toirov, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

> *s/ Emil J. Kiehne*
> EMIL J. KIEHNE
> Assistant U.S. Attorney

## 18 U.S.C. § 1382. Entering military, naval, or Coast Guard property

Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or

Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof--

Shall be fined under this title or imprisoned not more than six months, or both.

(June 25, 1948, c. 645, 62 Stat. 765; Pub. L. 103-322, Title XXXIII, § 330016(1)(G), Sept. 13, 1994, 108 Stat. 2147.)

**50 U.S.C. § 797. Penalty for violation of security regulations and orders**

**(a) Misdemeanor violation of defense property security regulations**

**(1) Misdemeanor**

Whoever willfully violates any defense property security regulation shall be fined under Title 18 or imprisoned not more than one year, or both.

**(2) Defense property security regulation described**

For purposes of paragraph (1), a defense property security regulation is a property security regulation that, pursuant to lawful authority--

**(A)** shall be or has been promulgated or approved by the Secretary of Defense (or by a military commander designated by the Secretary of Defense or by a military officer, or a civilian officer or employee of the Department of Defense, holding a senior Department of Defense director position designated by the Secretary of Defense) for the protection or security of Department of Defense property; or

**(B)** shall be or has been promulgated or approved by the Administrator of the National Aeronautics and Space Administration for the protection or security of NASA property.

**(3) Property security regulation described**

For purposes of paragraph (2), a property security regulation, with respect to any property, is a regulation--

**(A)** relating to fire hazards, fire protection, lighting, machinery, guard service, disrepair, disuse, or other unsatisfactory conditions on such property, or the ingress thereto or egress or removal of persons therefrom; or

**(B)** otherwise providing for safeguarding such property against destruction, loss, or injury by accident or by enemy action, sabotage, or other subversive actions.

**(4) Definitions**

In this subsection:

**(A) Department of Defense property**

The term "Department of Defense property" means covered property subject to the jurisdiction, administration, or in the custody of the Department of Defense, any Department or agency of which that Department consists, or any officer or employee of that Department or agency.

**(B) NASA property**

The term "NASA property" means covered property subject to the jurisdiction, administration, or in the custody of the National Aeronautics and Space Administration or any officer or employee thereof.

**(C) Covered property**

The term "covered property" means aircraft, airports, airport facilities, vessels, harbors, ports, piers, water-front facilities, bases, forts, posts, laboratories, stations, vehicles, equipment, explosives, or other property or places.

**(D) Regulation as including order**

The term "regulation" includes an order.

**(b) Posting**

Any regulation or order covered by subsection (a) shall be posted in conspicuous and appropriate places.

(Sept. 23, 1950, c. 1024, Title I, § 21, 64 Stat. 1005; Pub. L. 109-163, Div. A, Title X, § 1053, Jan. 6, 2006, 119 Stat. 3435.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES,

      Plaintiff,

v.                                                          Case No. 25-mj-1320 GBW

KOMILJON TOIROV,

      Defendant.

**ORDER DISMISSING CHARGES**

    **I.**    **PROCEDURAL POSTURE**

The United States has filed a Criminal Complaint against Defendant alleging

three misdemeanor crimes: Entry Without Inspection in violation of Title 8 U.S.C. §

1325; Violation of a Security Regulation in violation of Title 50 U.S.C. § 797; and

Entering Military Property for an Unlawful Purpose in violation of Title 18 U.S.C. §

1382. *See doc. 1*. "[A]nyone arrested for a crime without formal process, whether for

felony or misdemeanor, is entitled to a magistrate [judge]'s review of probable

cause…." *Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001) (citation omitted).[1]  This

review requires that the court determine that the facts alleged in "the complaint

establish probable cause to believe that an offense has been committed and that the

---

[1] Indeed, the review is required within 48 hours of arrest.  While the Court took longer to finish the review in this case, it had, within that time period, concluded that probable cause existed as to the Entry Without Inspection charge which supported a warrantless arrest.

defendant committed it[.]".  Fed. R. Crim. P. 4.  Having concluded its probable cause

review in this case, the court finds that the facts alleged in the complaint do not

establish probable cause for either the 50 U.S.C. § 797 or 18 U.S.C. § 1382 charge.[2]  As

such, those charges will be dismissed without prejudice.

---

[2] Notwithstanding the United States' belated objection to the Court's order for briefing, the Court has considered its arguments as well as those of the Federal Public Defender.  *See In the Matter of: MISDEMEANOR CHARGES PURSUANT TO 50 U.S.C. § 797 AND 18 U.S.C. § 1382*,  No. 2:25-mc-00019 GBW, *doc. 4* ("USA Brief"), *doc. 5* ("FPD Brief"), *doc. 6* ("USA Objection") (D.N.M. May 2025).  While the Court need not address every argument in the United States' Objection, given its remarkable tone and content, some points must be made.  Incredibly, this histrionic filing is in response to the Court's order for the United States Attorney's Office to file a brief on a legal question about a criminal charge it had brought.  Notably, the United States made no timely objection to the briefing order.  In fact, United States filed its brief before apparently realizing days later that the mere request for briefing was "an improper exercise of the Court's authority" and an "extraordinary departure from … foundational principles [ ]."  *USA Objection* at 2-3.  According to the government, the briefing order was in error because it was "issued without any prompting from any party."  *Id*. at 2.  However, as noted above and as the government must be aware, this Court has a *sua sponte* obligation to conduct a probable cause review of all charges involving a warrantless arrest.  Moreover, this Court has the independent obligation in any guilty plea proceeding to determine whether the proffered factual basis satisfies the elements of the crime.  Thus, for both probable cause review and the Court's Rule 11 obligations, conclusions about the requisite elements of charged crimes are essential.  The Court simply wanted to provide the government and defense counsel an opportunity to weigh in on that analysis.  Regardless, the government contends that this briefing would lead to an improper advisory opinion.  However, as should be clear from this Order, the Court is applying its legal analysis to particular cases.  To be sure, the Court's briefing order was not filed in a particular case, but instead in a miscellaneous matter.  Indeed, to fulfill its probable cause review, the Court could have filed the briefing order in the hundreds of cases filed by the government pursuant to the two "military trespass" statutes.  Nonetheless, this attempt at efficiency did not constitute constitutional error.  This conclusion is particularly true when the factual allegations in the complaints in question are virtually identical with respect to the two "military trespass" charges across hundreds of cases.  While the Court appreciates the government's newfound concern about the "particular facts of any case," the government's cut-and-paste approach to factual allegations in the complaints allows this Court to apply the legal analysis contained herein across every criminal complaint charging these crimes filed thus far and still pending.  Finally, the government objects to the Court's briefing order because it contends it would be improper for the Court to critically examine pending Informations.  Even assuming that the caselaw regarding challenging indictments cited by the government is fully applicable to informations which have not passed the review of a grand jury, it would have no bearing on the instant order which addresses a criminal complaint in a case where no information has been filed.

## II.    TITLE 50 U.S.C. § 797

This statute makes it a crime to "willfully violate[ ] any defense property security regulation."  50 U.S.C. § 797.  Specifically, in the instant case, Defendant is charged with violating a regulation promulgated by the military commander at Fort Huachuca prohibiting unauthorized entry into the NM National Defense Area ("NMNDA") which was created out of the "Roosevelt Reservation."  *Doc. 1*.  Under these circumstances, outside of *mens rea*, the elements of the crime are: (1) the NMNDA is lawfully regulated by a "defense property security regulation;" (2) such regulation prohibits unauthorized entry; (3) defendant entered the NMNDA; and (4) defendant's entry was unauthorized.  As quoted above, Defendant must "willfully violate" the regulation.  Thus, the Court must determine how that "willfully" requirement applies here.

The Federal Public Defender, who represented Defendant at the initial appearance, has argued that "the *mens rea* requirement of § 797 plainly requires knowledge of the security regulation at issue and an act in defiance of that regulation for some nefarious purpose."  *FPD Brief* at 4.  Put another way, they argue that "not only does the term 'willful' unambiguously require a culpable state of mind, but that culpable state of mind must also be specifically directed toward committing a defense property security regulation."  *Id.* at 5.  There is no citation for this proposition, and it contradicts Supreme Court precedent on the definition of "willfulness."

3

The primary case on the meaning of "willfulness" in criminal statutes is *Bryan v. United States*, 524 U.S. 184 (1998). As the Court explained, the

> word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears. Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. … As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose." In other words, in order to establish a "willful" violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful."

*Id.* at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). Of course, one could conclude that "acting with knowledge that one's conduct is unlawful" means that a defendant must indeed know the law. However, the Supreme Court expressly rejected this interpretation. The Court explained that a statutory willfulness requirement "does not [ordinarily] carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required." *Id.* at 195-96. The only exception to the traditional rule "involve[s] highly technical statutes that present[ ] the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* at 195 (citing *Cheek v. United States*, 498 U.S. 192 (1991) and *Ratzlaf v. United States*, 510 U.S. 135 (1994)). This court does not find that 50 U.S.C. § 797 as applied here is a statute which would fit within this exception. Notwithstanding the fact that the jurisdictional prerequisites to the crime – military property with a security regulation – may be legally intricate, the crime simply outlaws trespass on property administered by the military. Not only is this crime straightforward, its application

4

along the border where individuals are allegedly attempting to enter the United States illegally does not risk ensnaring individuals engaged in apparently innocent conduct. Therefore, this court concludes that, to establish a willful violation of a security regulation, the government need not show knowledge of the regulation, but only knowledge that the conduct is unlawful.

The United States argues that this knowledge can be sufficiently shown by Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325. *USA Brief* at 6-8. In response, the Federal Public Defender contends that the United States has failed to cite any cases which stand for the proposition that "general intent to commit a completed crime can form the basis of any willfulness and/or *mens rea* to commit a trespassing crime." *FPD Brief* at 6 n.4. Having reviewed the cases cited by the parties, this court agrees with the United States.

First, the court finds no authority to support the distinction the Federal Public Defender attempts to make here. In *Bryan*, the Supreme Court required only "knowledge that his conduct was unlawful." 524 U.S. at 191. There was no discussion of whether that knowledge was limited to another specific intent crime or whether it was completed or inchoate. Counsel provides no authority for making such a distinction and the court has found no cases interpreting willfulness which would support it. In fact, courts routinely support jury instructions on "willfulness" which state simply that the government must establish that the defendant knew his conduct

5

was "unlawful." *See United States v. Wyatt*, 964 F.3d 947 (10th Cir. 2020) (remanding two counts which required willfulness for retrial while implicitly endorsing the willfulness instruction which had been given by the trial court); *United States v. Robertson*, 709 F.3d 741, 745-46 (8th Cir. 2013).

Second, the analysis in *Bryan* supports the proposition that the defendant's knowledge that his particular conduct was unlawful in some fashion would constitute willfulness. In *Bryan*, the defendant was convicted of willfully dealing in firearms without a federal license. 524 U.S. at 186. There was "no evidence that he was aware of the federal law that prohibits dealing in firearms without a federal license." *Id*. at 189. The Court, however, found that willfulness was established because the evidence showed defendant "knew that his conduct was unlawful." *Id*. Specifically, the Court pointed to defendant's (i) use of straw purchasers; (ii) promises to purchasers that he would shave off serial numbers; and (iii) practice of selling guns on street corners. *Id*. at 189 n.8. As the dissent noted, when the Court accepted "only [a] 'general' knowledge of illegality," it did "not even limit … the universe of relevant laws to federal *firearms* statutes." *Id*. at 202 (Scalia, J., dissenting). Putting a fine point on it, Justice Scalia worried that, according to the Court's holding, "it ought to suffice if [defendant] knew that the car out of which he sold the guns was illegally double-parked, or if, in order to meet the appointed time for the sale, he intentionally violated Pennsylvania's speed limit on the drive back from the gun purchase in Ohio." *Id*. This Court is confident that

6

*Bryan* does not stand for such a broad a proposition and will instead assume that the apparent unlawfulness of a defendant's conduct must bear a reasonable relationship to the crime the defendant is accused of willfully violating.  That standard is met here. Defendant is alleged to have crossed an international border at a location (or place) not designated as an official port of entry -- a crime that, in essence, functions as a national trespass statute.  Moreover, such illegal entry is generally intended to avoid detection by law enforcement and will almost always occur over property whose ownership and control the person neither knows nor considers.  Consequently, the unlawfulness of illegal entry under 8 U.S.C. § 1325 is reasonably related to the crime of military trespass under 50 U.S.C. § 797.

However, the conclusion that Defendant's knowledge of unlawfully entering the United States may be sufficient to establish knowledge of unlawful conduct under 50 U.S.C. § 797 does not end the *mens rea* inquiry.  Whether and how a criminal statute requires the government to prove the *mens rea* of a defendant is a question of congressional intent.  *See Rehaif v. United States*, 588 U.S. 225, 228 (2019).

> In determining Congress' intent, we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct."  We normally characterize this interpretive maxim as a presumption in favor of "scienter," by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to "make a person legally responsible for the consequences of his or her act or omission."

7

*Id*. at 228-29 (internal citations omitted).  This presumption of scienter is generally applied to all but a statute's "jurisdictional elements."  *Id*. at 229-30.  "Jurisdictional elements do not describe the 'evil Congress seeks to prevent,'" but instead establish the authority of the government to regulate the conduct.  *Id*. at 230.  As applied here, the first two elements of the 50 U.S.C. § 797 charge fit into the "jurisdictional elements" category—that NMNDA is lawfully regulated by a "defense property security regulation;" and that such regulation prohibits unauthorized entry.  Together, these elements establish the legal and jurisdictional basis for this charge.  Essentially, those elements are the "law" Defendant is accused of violating and, as explained in *Bryan*, "ignorance of the law is no excuse" outside of highly technical statutes.  524 U.S. at 196.

That leaves the final two elements of the 50 U.S.C. § 797 crime as applied here – that defendant entered the NMNDA; and that defendant's entry was unauthorized. The court will apply the statute's "willfully" *mens rea* requirement to both these elements.  *See Rehaif*, 588 U.S. at 229-31 ("[B]y specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g).").  As detailed above, Defendant's intent to illegally enter the United States can satisfy the "willfully" requirement that Defendant knew that his conduct was unlawful under 50 U.S.C. § 797.  However, that knowledge is not the only requirement of the "willfully" *mens rea*.

8

This court again returns to *Bryan* which defined "willfully" in comparison to the *mens rea* requirement of "knowingly."  524 U.S. at 191-96.  The *Bryan* Court explained that,

> unless the text of the statute dictates a different result, the term "knowingly" … requires proof of knowledge of the facts that constitute the offense. … **More is required, however,** with respect to [ ] conduct … that is only criminal when done "willfully."  [For such the] jury must find that the defendant … acted with knowledge that his conduct was unlawful.

*Id*. at 193 (emphasis added).  In short, to establish willfulness, the government must show "knowledge of the facts that constitute the offense" **and** "knowledge that his conduct is unlawful."  *Id*. (emphasis added).  While the government's allegations in the instant case may satisfy the requirement of understanding that the conduct was unlawful, they fail to establish knowledge of the facts that constitute the offense.

As stated above, the government must show that Defendant entered the NMNDA and that Defendant's entry was unauthorized.  Therefore, knowledge of the facts that constitute that offense includes knowledge that the defendant has entered the NMNDA.  Requiring knowledge of the entry is also consistent with Congressional intent given the statute's requirement that "the regulation … shall be posted in conspicuous and appropriate places."[3]  50 U.S.C. § 797(b).  Relevant to knowledge, the

---

[3] Notwithstanding the court's conclusion that this provision supports the requirement of knowledge of entry, the Court is persuaded by the cases cited by the government that posting is not an independent element of the offense.  *See United States v. Strong*, 724 F.3d 51, 57-58 (1st Cir. 2013); *United States v. Irby*, 269 Fed. App'x 246, 248-29 (4th Cir. 2008) (per curiam).

9

Criminal Complaint alleges that "on April 24, 2025, signs were posted in the [NMNDA] stating in both English and Spanish that this is a restricted area, and that unauthorized entry is prohibited." *Doc. 1 at 3*. As the United States concedes, the NMNDA spans over 180 miles of "often difficult and mountainous terrain." *USA Brief at 9.* Consequently, the mere fact that some "signs" were posted in the NMNDA provides no basis on which to conclude that the Defendant could have seen, let alone did see, the signs. Relevant facts on this matter would include: (i) the words on the signs; (ii) the size of the signs; (iii) the height of the signs; (iv) the density of the signage; (v) evidence regarding how close Defendant was to a sign at any time prior to apprehension; (vi) evidence about Defendant's ability to comprehend the language on the signs;[4] and (vi) the lighting conditions at the relevant time and whether the signs were lighted or otherwise visible.[5] Beyond the reference to signage, the United States provides no facts from which one could reasonably conclude that the Defendant knew he was entering the NMNDA. Consequently, the Criminal Complaint fails to establish probable cause to believe that Defendant knew he/she was entering the NMNDA. As the court has held that such knowledge is an essential element of the 50 U.S.C. § 797 charge brought against Defendant, that charge fails and must be dismissed.

---

[4] The court notes that Defendant could not proceed with the initial appearance in either English or Spanish. *See doc. 2.*

[5] The court recognizes that some of these facts are touched upon in the briefing. *See USA Brief* at 1-2. However, as these facts are not alleged in the Criminal Complaint, they are not relevant to determining the probable cause contained therein.

10

### III.    TITLE 18 U.S.C. § 1382

This statute makes it a crime to "go[ ] upon any military … reservation … for any purpose prohibited by law or lawful regulation…."  18 U.S.C. § 1382.  The basic elements of the crime are not hidden – (1) a person "goes upon" a military reservation; and (2) does so for any unlawful purpose.

As both the United States and the Federal Public Defender spend considerable time on the second element, the court will begin there.  The court agrees with the briefing from both counsel that violations of the relevant paragraph of 18 U.S.C. § 1382 fall into two categories.  First, a defendant can "go[ ] upon" military property for a purpose that is unlawful for reasons apart from the entry itself.  *See, e.g., United States v. Allen*, 924 F.2d 29 (2d Cir. 1991).  Second, a defendant violates the same paragraph by "go[ing] upon" restricted military property without authorization.  In such a case, the unauthorized entry itself can provide the unlawful purpose.  *See, e.g., United States v. Parrilla Bonilla*, 648 F.2d 1373 (1st Cir. 1981).

The United States argues that Defendant's case falls into the first category.  Under this theory, Defendant entered the military property for the purpose of entering the United States without inspection as prohibited by 8 U.S.C. § 1325.  Notwithstanding the contrary arguments of the Federal Public Defender, the court broadly agrees with

11

the United States on this point.  As alleged in the Criminal Complaint, the NMNDA

entered by Defendant is contiguous to and parallel with the international border

between the United States and Mexico.  The Criminal Complaint further alleges that

Defendant entered the NMNDA in the process of illegally entering the United States at

a place quite distant from the nearest Port of Entry.  *See* 8 U.S.C. § 1325(a)(1).[6]  For the

purposes of probable cause, it is also reasonable to conclude that Defendant was

intending to elude any examination by entering the United States in the location he

chose.  *See* 8 U.S.C. § 1325(a)(2).  Under these circumstances, the Complaint establishes

probable cause to believe that Defendant's entry and presence in the NMNDA was for

an unlawful purpose.

The Court now turns to the first element – "goes upon" the military reservation.

Unlike the 50 U.S.C. § 797 charge, the statute contains no comprehensive *mens rea*

requirement.  Instead, the statute contains a distinct specific intent requirement which

adds to the first element.  *See, e.g.*, 21 U.S.C. § 841(a) ("[I]t shall be unlawful for any

person to knowingly or intentionally … to possess with intent to … distribute … a

---

[6] The Federal Public Defender argues that, at "a bare minimum, the purposeful requirement of 18 U.S.C. § 1382 requires the Government to prove an additional element beyond what is required under 8 U.S.C. § 1325; that the undocumented person did in fact know, for certain, that they are an 'alien' as that term is used under 8 U.S.C. § 1325." *FPD Brief* at 11.  The Court disagrees given that it is unlawful even for a United States citizen to enter the United States at a place not designated for entry.  *See* 19 U.S.C. § 1459; *see also United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 843-44 (S.D.Cal. 2019) (concluding that United States citizen would be subject to at least civil penalties for entering at a place not designated for entry).

12

controlled substance….").  Thus, the court must first determine whether there is any scienter requirement with respect to the "goes upon" element.  The United States argues that, as long as the specific intent of the second element is met, no additional *mens rea* is necessary.  *See USA Brief* at 11.

As quoted above, the Supreme Court has held that we presume "that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif*, 588 U.S. at 228-29 (quotations omitted).  Consequently, we presume "that criminal statutes require the degree of knowledge sufficient to make a person legally responsible for the consequences of his or her act or omission."  *Id*. at 229 (quotations and citations omitted).  This presumption applies "even when Congress does not specify any scienter in the statutory text," except as a statute's "jurisdictional elements."  *Id*. at 229-30. Certainly, the sole *actus reus* of this crime – going upon the military property – is not a mere jurisdictional element.  Consequently, the presumption of scienter applies.  This general presumption is bolstered by the fact that the entry ("goes upon") is the only act elementally required from a defendant committing this crime.  Finally, the context of 18 U.S.C. § 1382 supports a knowledge requirement for the "goes upon" element.  By their nature, military reservations are generally obvious and well-marked.  However, in many circumstances, public roads surrounding a military reservation pass through and are within the formal boundaries of the military property.  *See, e.g. United States v. Apel*,

13

571 U.S. 359, 361-63 (2014) (Pacific Coast Highway passes through and is part of military property of Vandenberg Air Force Base).  Consequently, individuals could easily enter military property without being aware that they had crossed a meaningful boundary assuming no signs were posted.  If a person were driving along such a road intending to commit a crime in the next town, they would be guilty of a 18 U.S.C. § 1382 crime by the government's logic.  In fact, they would be guilty even if they never committed the crime when they arrived at the next town and thus had never engaged in any knowingly culpable conduct.  The absurdity of such a result strongly suggests that Congress intended only to criminalize the "go[ing] upon" in 18 U.S.C. § 1382 if it was done knowingly.

The United States argues that, only in the second category of 18 U.S.C. § 1382 cases – the alleged unlawful purpose is unauthorized entry itself – should it have to establish knowledge.  The United States is correct that, in this second category, it must prove that the defendant knew they were prohibited from entering.  *See, e.g., Parrilla Bonilla*, 648 F.2d at 1377; *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985); *United States v. Hall*, 742 F.2d 1153, 1154-55 (9th Cir. 1984); *United States v. Floyd*, 477 F.2d 217, 224 (10th Cir. 1973).  But knowledge that they were specifically or generally prohibited is not the only element the government must prove.  As the *Floyd* court affirmed, it "becomes a matter of proof as to whether the Defendants were [prohibited] persons and intended to enter the base knowing that they were so prohibited."  477 F.2d at 224.

14

Thus, under *Floyd*, three elements must be established to prove the second category of 18 U.S.C. § 1382 offenses: (i) defendant was prohibited from entering the base; (ii) defendant intentionally entered the base; (iii) defendant knew they were prohibited from entry. Requiring an intentional entry means that the defendant must know they were entering the military property. Unsurprisingly, in the other cases cited by the United States where § 1382 convictions were upheld, the facts clearly demonstrate that the respective defendant knew they had entered the military property AND knew they were prohibited from doing so. *See Cottier*, 759 F.2d at 762 (defendant apprehended inside area enclosed by barbed wire fence); *Hall*, 742 F.2d at 1154 (defendant apprehended on base which was closed and fenced-in); *cf. Parrilla Bonilla*, 648 F.2d at 1377 (expressing great concern about the lack of knowledge given that defendants entered an area on the base "without any visible boundary marking" while reversing the convictions on other grounds). Indeed, not requiring knowledge of entry would again lead to absurd and unfair results. For example, an individual, knowing they were prohibited from entering a military base, who steps on land he does not know is part of that base would be guilty without having any culpable intent. This conclusion that knowledge of entry is required for the second category of 18 U.S.C. § 1382 cases supports, rather than undermines, the court's conclusion that knowledge that one is entering the military property is an element under both categories.

15

For the same reasons described above, the Criminal Complaint fails to establish probable cause to believe that Defendant knew he/she was entering the NMNDA. Given the lack of probable on this essential element, the 18 U.S.C. § 1382 charge fails and must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the factual allegations in the Criminal Complaint fail to establish probable cause on an essential element of Violation of a Security Regulation in violation of Title 50 U.S.C. § 797 and Entering Military Property for an Unlawful Purpose in violation of Title 18 U.S.C. § 1382.  Therefore, the Court DISMISSES WITHOUT PREJUDICE those charges.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                   **Case No. CR 25-1801 SMD**

**KOMILJON TOIROV,**

      **Defendant.**

**<u>AMENDED ORDER OF RELEASE</u>**

THIS MATTER is before the Court on remand from the Tenth Circuit Court of Appeals for further consideration of whether the defendant should be released or detained pending the resolution of this case and, more particularly, to consider "whether the defendant is a flight risk even if the statutory-interpretation question is resolved in his favor." Doc. 36-1.

Initially, this matter came before the Court on June 18, 2025, for an appeal of the Release Order entered by United States Magistrate Judge Jerry H. Ritter on May 29, 2025. The Court reviewed the charging documents, release order, briefs from the parties, and Chief United States Magistrate Judge Gregory Wormuth's Order Dismissing Counts 2 and 3 of the Complaint filed in this case. *See* Doc. 1; Doc. 4; Doc. 6; Doc. 9; Doc. 13; Doc. 14. The Court also reviewed the parties' submission following Judge Wormuth's request for briefing in *In re Misdemeanor Charges Pursuant to 50 U.S.C. § 797 and 18 U.S.C. § 1382*, No. 2:25-mc-00019-GBW (D.N.M. May 13, 2025), Dkt. Nos. 1, 4–7. At the hearing, the Court heard from all the parties and is fully advised. The Court has adopted Judge Wormuth's reasoning and conclusions of law in the Order Dismissing Charges in this case. Doc. 4.

The burden of proof to detain someone, depriving them of their liberty, pending the resolution of federal charges is shouldered *entirely* by the government. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). Indeed, § 3142 says that "the [court] *shall* order the pretrial release of the person on personal recognizance [or conditions] … *unless* the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (emphasis added). It is the government's burden to prove by a preponderance of the evidence that the defendant is a flight risk. *Cisneros*, 328 F.3d at 616. While it is also the government's burden to prove that a defendant is a danger by clear and convincing evidence, dangerousness has not been raised here.

To begin anew, I will set forth the relevant facts and my conclusions, after considering all submissions and arguments:

1. At the hearing on this matter, the United States offered only cursory argument as to how the nature and circumstance of the offense support detention of the defendant pending the resolution of the remaining charges in this case, pursuant to 18 U.S.C. § 3142(g)(1). However, the nature and circumstances of all the offenses charged in this case include allegations that the defendant intended to enter United States, and did so, from Mexico at a place not designated as a lawful port of entry, without permission and, presumably, through a portion of the New Mexico National Defense Area (NMNDA), a newly designated military installation along the international border in southern New Mexico. Doc. 6. The defendant is a citizen of Uzbekistan, and his unlawful entry into the United States is a crime to which he has already pled guilty and been sentenced. Doc. 8. That charge has been severed

from the remaining charges, judgment entered, and is concluded. Doc. 18; Doc. 19. While the defendant's unlawful entry evidences his intention to enter and remain in the United States in contravention of the law, there is nothing inherent in that charge, nor the defendant's guilty plea thereto, that evidences any knowledge that the location at which he entered the United States was also a National Defense Area, or of any military or defense-related character whatsoever, nor that he entered through that specific area for any particular purpose related to its defense-related character. In fact, the government conceded at the hearing on release that it cannot prove the defendant had any notice or knowledge that he was entering a National Defense Area. Doc. 17 at 14, 36. The defendant was released pending trial and not held in ICE custody, but rather moved to New York and released into the community. Doc 34. In the situation where the government's case is strong and conviction likely, a defendant would have little incentive to return to court to face these pending charges. However, that is not *this* case. Here, the government concedes it cannot convict the defendant under the elemental requirements that every judge in the District of New Mexico Las Cruces courthouse, in both magistrate court and district court, has concluded must be met to convict. While returning for trial will put the defendant within reach of immigration officials and likely facilitate his removal from the United States, he is already released and pending removal, and an *acquittal* of these military charges may very well have a positive impact on the defendant's future ability to secure lawful status in the United States. Therefore, the defendant has a significant incentive, in this case, to come back to trial, knowing the government agrees it cannot prove its remaining case

3

against him.  These facts support release of the defendant pending the resolution of the charges in this case, pursuant to 18 U.S.C. § 3142(g)(1).

2.  The weight of the evidence against the defendant in the remaining charges is fatally flawed.  For all of the reasons stated on the record at the hearing on this matter, I find wholly unpersuasive the government's argument that the willfulness requirement of 50 U.S.C. § 797 can be sufficiently shown by Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325, and that his entry into the NMNDA while unlawfully entering the United States violates the plain text of 18 U.S.C. § 1382 with no further proof of knowledge.  While the government has not said it outright, their legal theory is tantamount to asserting these are strict liability crimes.  I fundamentally disagree.  The government concedes that it cannot convict if the Court's version of the elements is correct.  Therefore, pursuant to 18 U.S.C. § 3142(g)(2), the lack of any weight to the United States' evidence in this case weighs in favor of release.

3.  Turning to the defendant's history and characteristics, the United States offered no information as to the history and characteristics of the defendant pursuant to 18 U.S.C. § 3142(g)(3).  However, considering the submissions and arguments presented, he is a citizen of Uzbekistan, with no identified criminal history prior to his apprehension in this case.  Doc. 14 at 5; Doc. 17 at 37.  While there is no information about the defendant's ties to any community within the country, following the June 18, 2025 hearing on this matter, the defendant was taken into custody by immigration officials and has since been released to the community pending removal from the United States.  Doc. 34.  This evidences ties to this

4

country and belief by the government writ large that the defendant will honor his duty to keep officials apprised of his whereabouts and contact information in order to submit to future proceedings, and potentially be removed from the United States at some future designated time. Therefore, I find nothing at this time pursuant to 18 U.S.C. § 3142(g)(3) that would warrant the defendant's detention pending the resolution of this case, and these facts therefore weigh in favor of release.

4. There is no information that the defendant presents a danger to any other person or the community, pursuant to 18 U.S.C. § 3142(g)(4).

5. Finally, I note that while the government stands, at this point, as the lone voice espousing their version of the elements, they may be correct, regardless of my disagreement. Thus, without a ruling otherwise on the elements from the Tenth Circuit, I do not find that they pursued their theory of the law in bad faith. However, a lack of bad faith pursuing an unpopular legal theory does not weigh in favor of the defendant's detention. As opposed to recognizing that they have a difficult prosecution and may lose but should pursue the charges nonetheless, when the government concedes that they *cannot* prove their case, they ordinarily dismiss the charges on their own to assure that justice is done, even in the face of losing their case. Justice and winning do not always go hand-in-hand. That has not been the posture of this case. Ordinarily, and absent some other compelling reason, I will not detain a defendant when all parties agree, as the government does by their concession, that the outcome in the case is likely an acquittal. This is not to say that the weight of the evidence is determinative in my findings, but rather in the face of the government's concession of near certain defeat, justice demands that

5

Mr. Toirov not be further deprived of his liberty. The circumstances and posture of this case are extraordinary and hopefully not to be repeated often.

THEREFORE, upon consideration of all the facts and arguments presented, pursuant to 18 U.S.C. § 3142(g), assuming the defendant's statutory interpretation of 18 U.S.C. § 1382 and 50 U.S.C. § 797(a)(1) prevails, based on the totality of factors described above, I FIND by a preponderance of the evidence the defendant does not present a risk of non-appearance, and

THEREFORE FIND that the defendant can remain released on his own recognizance pending resolution of this matter.

IT IS SO ORDERED.

_____
SARAH M. DAVENPORT,
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 25-CR-1801 SMD |
| | ) | |
| KOMILJON TOIROV, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DISMISSING COUNTS 2 AND 3 OF THE INFORMATION

This Court, having reviewed the United States' Unopposed Motion to Dismiss Counts 2 and 3 of the Information (Doc. 63), finds that the motion is well-taken.

**IT IS THEREFORE ORDERED** that the motion (Doc. 63) is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts 2 and 3 of the Information (Doc. 6) are **DISMISSED WITHOUT PREJUDICE**.

In granting this Order, the Court does not adopt the United States' interpretation that the Court's prior commentary on the elements in this case is a final Order subject to appeal.

_____
SARAH M. DAVENPORT
UNITED STATES DISTRICT JUDGE