**No. 26-2017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**United States of America**

Plaintiff-Appellant,

**v.**

**Komiljon Toirov**

Defendant-Appellee.

## Defendant-Appellee's Response-No Attachments

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Sarah M. Davenport, presiding.
District Court No. 2:25-CR-1801-SMD

ORAL ARGUMENT IS REQUESTED

Amanda Skinner
Attorney for Appellee
Federal Public Defender
District of New Mexico
506 S. Main Street, Suite 400
Las Cruces, N.M. 88001
575.527.6930
amanda_skinner@fd.org

**October 23, 2026**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES............................iii

PRIOR OR RELATED APPEALS..................................................v

ISSUES PRESENTED.............................................................1

SUMMARY OF THE ARGUMENT..................................................1

STATEMENT OF THE CASE AND FACTS....................................3

STANDARD OF REVIEW.........................................................8

ARGUMENT...........................................................................9

I. The Government's Appeal of the Dismissal Order Does Not Include the Right to Appeal Dicta by the District Court..................................................................9

II. 50 U.S.C. § 797 Requires, at a Minimum, Knowledge of NDA Land...................................................................11

III. 18 U.S.C. § 1382 Requires, at a Minimum, Knowledge of NDA Land...................................................................16

IV. Mr. Toirov's Guilty Plea to Improper Entry Cannot Satisfy the *Mens Rea* elements of §§ 797 and 1382................................18

V. The Rule of Lenity Should Apply........................................23

CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT.........................................................................24

CERTIFICATE OF COMPLIANCE WITH RULE 32(A).....................25

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION............26

## TABLE OF CASES AND OTHER AUTHORITIES

### TABLE OF CASES

**PAGE**

*Arizona v. United States*
567 U.S. 387, 407 (2012)....................................................20

*Bryan v. United States*
524 U.S. 184 (1998)....................................................13, 14

*Estate of McMorris v. C.I.R.*
243 F.3d 1254 (10th Cir. 2001)................................3, 10, 18, 22

*Muscarello v. United States*
524 U.S. 125..............................................................23

*Rehaif v. United States*
588 U.S. 225 (2019)....................................................3

*Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*
327 F.3d 1019 (10th Cir. 2003)..........................................15

*United States v. Cottier*
759 F.2d 760 (9th Cir. 1985)...........................................17

*United States v. Deberry*
430 F.3d 1294 (10th Cir. 2023)..........................................10

*United States v. Floyd*
477 F. 2d 217 (10th. Cir. 1973).................................16, 17

*United States v. Friday*
525 F.3d 938 (10th Cir. 2008)...........................................9

*United States v. Gaspar-Miguel*
947 F.3d 632 (10th Cir. 2020)...........................................20

*United States v. Koerber*

10 F.4th 1083 (10th Cir. 2021)........................................8

*United States v. Madrigal-Valadez*
561 F.3d 370 (4th Cir. 2009)........................................16

*United States v. McBride*
94 F.4th. 1036 (10th Cir. 2024)........................................9

*United States v. Nunez-Soberanis*
406 F.Supp.3d 835 (S.D. Ca. 2019)..............................18, 19

*Unites States v. Ruiz-Gea*
340 F.3d 1181 (10th Cir. 2003)........................................23

*United States v. Toirov (Toirov I)*
No. 25-2074, 2025 WL 2406099 (10th Cir. Aug. 20, 2025)............7

*United States v. Toirov (Toirov II)*
No. 25-2109, 2025 WL 3496370 (10th Cir. December 5, 2025).......7

*United States v. Warner*
131 F.4th 1137 (10th Cir. 2025)........................................9

**TABLE OF OTHER AUTHORITIES**

**PAGE**

8 U.S.C. § 1302........................................................20

8 U.S.C. § 1325........................................4, 5, 11, 12, 18, 19, 20

18 U.S.C. § 1382..............................1, 2, 4, 16, 17, 18, 19, 20, 23

18 U.S.C. § 3731........................................................1

50 U.S.C. § 797........................1, 2, 3, 4, 11, 12, 13, 14, 15, 18, 19, 23

Army Regulation 190-13................................................15

Tenth Cir. Crim. Jury § 1.38........................................................13

**PRIOR OR RELATED APPEALS**

The Government filed two bond appeals in this case: *United States v. Toirov (Toirov I),* No. 25-2074, 2025 WL 2406099 (10th Cir. Aug. 20, 20225) and *United States v. Toirov (Toirov II),* No. 25-2109, 2025 WL 3496370 (10th Cir. December 5, 2025).

## ISSUES PRESENTED

Does the Government have the right to appeal dicta, absent an order memorializing those comments, simply because it moved to dismiss the information?

Do 50 U.S.C. § 797 and 18 U.S.C. § 1382 require the Government to prove Mr. Toirov knew of the land's alleged restricted military status?

## SUMMARY OF THE ARGUMENT

Section 3731 allows the Government to appeal an "order of a district court dismissing an … information." Yet, even the most expansive reading does not allow the Government to use an appealable order as a vehicle to obtain review of dicta from prior orders which were vacated. A1.77 (district court's dismissal order stating "the Court does not adopt the United States' interpretation that the Court's prior commentary on the elements in this case is a final Order subject to appeal."). [1]

Without an underlying order from the district court, the appeal in this case is limited to whether the district court abused its discretion by granting the Government's motion to dismiss. Because the Government

[1] Citations to the Government's appendices will take the following form: A1.#. The first number after "A" refers to the appendix volume on appeal, with the following number indicating the page number.

cannot meet the elements of both 50 U.S.C. § 797 and 18 U.S.C. § 1382 and the dismissal order is the remedy the Government requested, this Court should affirm the dismissal order.

But other grounds to affirm the dismissal order exist because the Government is also unable to meet its burden of proof as to both charges levied against Mr. Toirov. The Government concedes Mr. Toirov had no notice he was about to enter a National Defense Area (NDA) but urges this Court to find his conviction for improper entry supplies any necessary *mens rea* as to both 50 U.S.C. § 797 and 18 U.S.C. § 1382 (NDA charges).

Mr. Toirov's improper entry conviction has no bearing on the *mens rea* for the charges because improper entry does not require the Government to prove Mr. Toirov knew it was unlawful to enter the United States somewhere other than a port of entry and improper entry is not a continuing offense.

Requiring knowledge of entry into an NDA is consistent with Congressional intent given § 797's posting requirements. *See* 50 U.S.C. § 797(b) (stating "the regulation … shall be posted in conspicuous and appropriate places."). And requiring the Government to prove

knowledge of the NDA under § 1382's "goes upon" element is entirely consistent with the Supreme Court's direction "that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v. United States*, 588 U.S. 225, 228-29 (2019) (quotations omitted).

This Court should affirm the dismissal the Government requested.

## STATEMENT OF THE CASE AND FACTS

### A strip of public land becomes an NDA and part of an Arizona Army base.

For more than a century, the land along New Mexico's border with Mexico was a public reservation. Gov.Br.1–2. In April 2025, the Department of the Interior transferred it to the Department of Defense, and the Army made it an NDA that is now part of Fort Huachuca, an installation in Arizona. Gov.Br. 2–3. Fort Huachuca's commander designated the strip a restricted area on April 18.[2] *Id.* The strip runs

[2] Mr. Toirov maintains the Government cannot prove it legally established an NDA or that, if it did, that the Government can prove the boundaries of the NDA. *See New Mexico Wildlife Federation v. U.S. Department of the Interior*, 1:26-cv-03377, Doc. 1 (Complaint and Petition for Review of Agency Action arguing the executive branch unlawfully transformed public land to create the NDA and that

more than 180 miles across what the Government calls "often difficult and mountainous terrain." *Id.* Signs indicating this strip is a restricted area went up on April 24, 2025. Gov.Br.10. The signs are in English and Spanish. *Id.*

**Ten days later, Mr. Toirov is encountered by Border Patrol and charged by criminal complaint.**

On the evening of May 4, 2025, Border Patrol agents encountered Mr. Toirov several miles east of the Santa Teresa, New Mexico port of entry. A1.12. Mr. Toirov is from Uzbekistan, and he speaks only Uzbek and Russian. A1.54-56.

The Government charged Mr. Toirov with three misdemeanors arising from the encounter via criminal complaint: improper entry by an alien, 8 U.S.C. § 1325; willfully violating a defense property security regulation, 50 U.S.C. § 797; and going upon a military installation for a prohibited purpose, 18 U.S.C. § 1382. *Id.* at 11.

---

"because of poor mapping and signage, in many places even [plaintiffs] who have spent their entire lives in the area surrounding the NDA are unable to determine whether they are on military land[.]"); *see also Estate of McMorris v. C.I.R.*, 243 F.3d 1254, 1258 n.8 (10th Cir. 2001)(explaining that this can take judicial notice of documents and docket materials filed in other courts).

The complaint does not give exact coordinates of where the Government believed Mr. Toirov entered the United States. *Id.* at 11-13. It does not say whether a sign stood between the border and the place he entered or was found. *Id.* It does not say he saw a sign, or that he could have read one. *Id.* When he was first brought before a magistrate judge, the hearing could not go forward because "no interpreter was available for Mr. Toirov, who speaks Uzbek." *Id.* at 41.

**The Chief Magistrate Judge dismisses the NDA charges and the Government refiles them.**

On May 1, 2025, the Chief Magistrate Judge issued an Order for Briefing directing the United States to defend with supporting legal authority, its position as to the appropriate *mens rea* standard for both NDA charges. A3.2-3. The Order allowed the defense community to respond, and the Las Cruces members of the CJA panel elected to join the FPD's response. *Id.* at 5, 20.

The Government argued any *mens rea*, as to both charges, was supplied by a defendant's improper entry under § 1325. *Id.* at 9-11, 14-16. The defense argued an improper entry had no bearing on the *mens rea* required by each statute and that the NDA charges required the Government to prove that, at a minimum, a defendant knew they

stepped into the NDA. *Id.* at 21, 29-30. The defense further argued both statutes have specific and unambiguous *mens rea* requirements that are deeply rooted in Anglo-American criminal jurisprudence, which cannot be conveniently avoided through sleight-of-hand arguments. *Id.* at 19-20.

On May 19, 2025, the Chief Magistrate Judge completed his probable cause review in Mr. Toirov's case and dismissed both NDA charges after determining they were unsupported by probable cause. A1.14-29. Undeterred, the Government refiled the NDA charges against Mr. Toirov by information, thus cutting off another probable cause review by the court. *Id.* at 30-31.

**Mr. Toirov pleads guilty to improper entry and is sentenced to time served.**

Mr. Toirov pleaded guilty to improper entry. *Id.* at 3. The Government did not oppose a sentence of time served, and he received one. *Id.* at 4. The court then heard bond arguments on the remaining NDA charges. *Id.* The court released Mr. Toirov, and the Government appealed the release order to the district court. *Id.* at 4, 28-29.

**The Government concedes it cannot prove Mr. Toirov knew of the NDA.**

When the Government appealed Mr. Toirov's release, it acknowledged that it could not prove he knew he was entering an NDA. *Id.* at 33-39. The district court adopted the Chief Magistrate Judge's reading of the elements of the NDA charges, found no evidence of flight risk or danger, and affirmed the release order. Id. at 47-48.

The Government appealed to this Court twice. Meanwhile, immigration officials took Mr. Toirov into custody, moved him to New York, and released him into the community pending removal. This Court did not rule on the elements of either NDA charge in the prior appeals.

In *Toirov I*, this Court "vacated the [district] court's original release order, concluding the district court erred in treating the statutory interpretation questions as dispositive." *United States v. Toirov*, No. 25-2074, 2025 WL 2406099, at 1 (10th Cir. Aug. 20, 2025). On remand, the district court again ordered Mr. Toirov released, the Government again appealed, and this Court affirmed the release order in *Toirov II*. *United States v. Toirov*, No. 25-2109, 2025 WL 3496370, at 1-2 (10th Cir. December 5, 2025).

**The Government dismisses its own case.**

Trial was set for January 2026. Days before trial, the Government moved to dismiss the NDA charges, "if [the district court] still maintains its previously expressed interpretation" of the statutes so it could consider an appeal. A1.75-76. In its motion to dismiss, the Government specifically took issue with the district court "expressing agreement" with the Chief Magistrate Judge's interpretation of the elements of the NDA charges in a release order this Court later vacated as well as alternative findings, which never took effect, as ordered by this Court. *Id.*; s*ee United States v. Toirov*, 2025 WL 2406099 (10th Cir. August 20, 2025) (decision of this Court vacating "the district court's June 18 release order and remand for further consideration of the detention/release question consistent with this order and judgment.").

The district court granted the Government's motion and dismissed the counts without prejudice. In the order dismissing the charges, the district court added that it "does not adopt the United States' interpretation that the Court's prior commentary on the elements in this case is a final Order subject to appeal." A1.77.

**STANDARD OF REVIEW**

This Court reviews "a district court's dismissal without prejudice for an abuse of discretion." *United States v. Koerber*, 10 F.4th 1083, 1105 (10th Cir. 2021). Should this court review any statutory interpretation issues, like the elements necessary to secure a conviction under one of the NDA charges, the review is de novo. *United States v. Warner*, 131 F.4th 1137, 1145 (10th Cir. 2025).

## ARGUMENT

### I. THE GOVERNMENT'S APPEAL OF THE DISMISSAL ORDER DOES NOT INCLUDE THE RIGHT TO APPEAL DICTA BY THE DISTRICT COURT.

This Court reviews a district court's dismissal of an information for abuse of discretion. *United States v. Friday*, 525 F.3d 938, (10th Cir. 2008). The Government does not argue it was either an abuse of discretion or plain error to dismiss the NDA charges when the Government admitted it could not prove them and requested the dismissal.[3]

[3] The Government argues only for de novo review of the elements of the NDA charges. Gov.Br.9, 20; *see United States v. McBride*, 94 F.4th. 1036, 1045 (10th Cir. 2024) (holding failure to plead plain error on appeal can result in those challenges being waived).

Despite the confined inquiry for this Court, the Government argues that *United States v. Deberry*, 430 F.3d 1294 (10th Cir. 2023) allows this Court to review the district court's dicta from orders generated during the Government's bail appeals. Gov.Br.25-27. But *Deberry* is inapposite because in that case the district court entered a discovery order the Government thought was erroneous, and the Government asked the district court to dismiss the indictment so it could appeal the *underlying order*. 430 F.3d at 1298.

In Mr. Toirov's case, the Government takes issue with the Chief Magistrate's order dismissing the original complaint for lack of probable cause. Of course, the Government cannot appeal a failure to find probable cause, so the Government now attempts to force appellate review of the elements of the NDA charges by moving to dismiss the information it later filed.[4]

[4] The Government did try to appeal the Chief Magistrate Judge's failure to find probable cause in another NDA case, but the district court appropriately dismissed the appeal for lack of jurisdiction. *United States v. Rozlkova*, 2:25-mj-10318-GBW, Doc. 10 (dismissing the Government's appeal for lack of jurisdiction.); *see C.I.R.*, 243 F.3d at 1258 n. 8 (explaining that this can take judicial notice of documents and docket materials filed in other courts).

The district court indicated it would instruct the jury on the elements as the Chief Magistrate Judge found them in the order dismissing the original complaint. But this was dicta in the context of the district court's first release order, which this Court vacated, and alternative findings ordered by this Court which never took effect. A1.75-76; *United States v. Toirov*, 2025 WL 2406099 (10th Cir. August 20, 2025) (decision of this Court vacating "the district court's June 18 release order and remand[ing] for further consideration of the detention/release question consistent with this order and judgment.")

The Government did not proffer jury instructions or file a motion in limine related to the elements that the district court denied. Thus, this Court should adopt the district court's reasoning that the prior commentary on the elements in this case is not a final order subject to appeal and confine any appellate review to whether the district court abused its discretion in granting the Government's motion to dismiss. *See* A1.77 (district court's dismissal order stating "the Court does not adopt the United States' interpretation that the Court's prior commentary on the elements in this case is a final Order subject to appeal.").

## II. 50 U.S.C. § 797 REQUIRES, AT A MINIMUM, KNOWLEDGE OF NDA LAND.

In relevant part, § 797 states:

Whoever willfully violates any defense property security regulation shall be fined under title 18 or imprisoned not more than one year, or both. 50 U.S.C. § 797(a)(1).

In the context of the bail litigation, the district court correctly determined the Government could not meet its burden to prove the willfulness requirement under § 797. A1.48 (finding "unpersuasive the United States' argument that the willfulness requirement of 50 U.S.C. § 797 can be sufficiently shown by Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325.").

The Government interprets this to mean that a defendant must know of "the existence or details of the 'defense property security regulation' he is violating." Gov.Br.10-11. But the district court did not state the Government was required to prove that Mr. Toirov knew that a regulation existed, who issues it, or how the land came to the Army. The district court stated only that the Government needed to show that Mr. Toirov knew he was "entering … some kind of military restricted area."

The plain language of § 797 makes the *mens rea* requirement unavoidable. First, "willfully" describes the violation of the security regulation. On the Government's reading, the willful act is the violation of 8 U.S.C. 1325, and the security regulation is violated by accident. This is not what the text of § 797 requires.

The definitions Congress included in the statute further undercut the Government's argument. The statute explicitly requires that "[a]ny regulation or order covered by subsection (a) shall be posted in conspicuous and appropriate places." 50 U.S.C § 797(b). If no knowledge of the existence of the regulation (here, trespassing on an NDA) was required, there would be no need to post it or otherwise advertise that a regulation covers the land in question and subsection (b) of § 797 would be wholly superfluous.

Second, "in the criminal context, a 'willful' act is one undertaken with 'bad purpose.'" *Bryan*, 524 U.S. at 191. Thus, the Court must discern what "bad purpose" the accused must have at the time they "violate any defense property security regulation." *See* 50 U.S.C. § 797. It is impossible to have a bad purpose connected to violating a security

regulation without first, at a minimum, understanding you are entering an area covered by a regulation.

The Tenth Circuit Pattern Criminal Jury Instructions suggest that

> when a statute uses [willfully], care should be taken to distinguish between its meanings. A 'willfulness' requirement may impose on the Government the burden of proving that the defendant had knowledge of his conduct, or that his conduct was unlawful, or of the precise legal duty, the violation of which forms the substance of the charges against the defendant.

Tenth Cir. Crim. Jury § 1.38.

While "willful" does not always trigger a specific intent requirement, the term "differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind." *Bryan*, 524 U.S. at 191.

In applying these well-established standards to § 797, the statute plainly requires the Government to prove that Mr. Toirov acted with the specific intent to violate a specific security regulation. That is, the statute requires that a person "willfully violate" a certain subset of regulations: those that protect defense property security. Because a person must "willfully violate" such a regulation, they must not only act

with some nefarious intent, but that nefarious intent must also be directed at violating a specific defense property security regulation, which here is entering the restricted military property.

The Government need not prove that Mr. Toirov knew the regulation's existence or details, and the district court never stated that it did. But the Government must prove that Mr. Toirov knew he was entering "some kind of military restricted area." The Army adopts these principles and specifically notes in the Army Physical Security Program materials that "[f]ailure to to post conspicuous signs and notices to give persons approaching a restricted area actual knowledge of the restriction may hamper any resulting legal procedure."[5] AR 190-13 at 6-7(b).

Section 797's specific focus on "defense property security regulation[s]" to the express exclusion of other forms of regulations is also illustrative. It is a long established and familiar maxim of statutory

[5] Mr. Toirov does not allege a failure to post signs results in an automatic win for a defendant. Someone could have knowledge of an NDA even without posted signs. However, the regulations' reference to signage is relevant because it highlights the Army's understanding that a would-be trespasser must have actual knowledge they are approaching a restricted area if charges are pursued.

interpretation that "the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003). If Congress had intended for § 797 to reach a person whose only culpable knowledge concerned some other law, it would have said so. The statutes' failure to include any subsection of regulations or laws (*e.g.*, immigration offenses) other than defense security regulations unambiguously limits the statute to only "defense property-security regulation[s]." 50 U.S.C. § 797.

## III. 18 U.S.C. § 1382 REQUIRES, AT A MINIMUM, KNOWLEDGE OF NDA LAND.

The Government's inability to prove Mr. Toirov had knowledge he was approaching an NDA also derails its attempt to prosecute a violation under § 1382. The statute applies to anyone who "within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation[.]" 18 U.S.C. § 1382.

Every Circuit, including this one, that has considered § 1382 has "concluded that notice is a necessary element of § 1382 when the indictment alleges that the accused violated an entry requirement." *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009); *United States v. Floyd*, 477 F.2d 217, 225 (10th Cir. 1973).

At the outset, the Government ignores the fact that § 1382 is plainly designed to punish those who act with the specific intent to trespass upon military property and then commit some other offense. For example, a person who purposefully enters military property for the purpose of committing a burglary could be convicted under § 1382, but only if the Government proves that the individual: (1) intended to trespass upon the military property specifically; and (2) that their illegal trespass was done specifically in furtherance of the inchoate burglary offense.

Even if a completed improper entry offense provides evidence of an intent to enter military land with a prohibited purpose, this Court has interpreted § 1382's "prohibited purpose" language as being directly tied to a knowledge and/or notice requirement. *See Floyd*, 477 F.2d at 225.

Thus, "[w]here entry alone is the basis of the violation," the Government must prove only that the defendant knew that "the entry [was] unauthorized." *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985). So, even if Mr. Toirov is charged under a theory of entry alone, the Government must still prove Mr. Toirov knew his entry on the NDA was unauthorized.[6]

## IV. MR. TOIROV'S GUILTY PLEA TO IMPROPER ENTRY CANNOT SATISFY THE *MENS REA* ELEMENTS OF §§ 797 AND 1382.

The Government argues that Mr. Toirov's guilty plea to improper entry into the United States supplies the necessary *mens rea* as to both NDA charges. Gov.Br.7-9, 19-20.

---

[6] The defense doubts the Government even has evidence of the NDA boundaries. *See* A2.40 (undersigned counsel noting, without objection from the Government, that the Government had not disclosed any maps in Mr. Toirov's case). And, in a separate case, the Government admitted it was mistaken as to what areas of land the NDA encompasses. *See* United States' Response to Court's Oral Order (explaining that defendant's case was dismissed because "the United States Attorney's Office learned from the United States Border Patrol that portions of the international border previously understood as encompassed by the NM NDA were not, in fact, transferred to the jurisdiction of the Department of the Army.") *United States v. Pascual Jimenez-Santiz*, No. 2:25-cr-1047 GBW (Doc. 11); *see also C.I.R.*, 243 F.3d at 1258 n. 8 (explaining that this Court can take judicial notice of documents and docket materials filed in other courts).

To secure the improper entry conviction against Mr. Toirov, the Government established Mr. Toirov intentionally entered the United States and that he did not enter at a designated port of entry. 18 U.S.C. § 1325. Mr. Toirov's guilty plea to improper entry did not establish that Mr. Toirov knew that his conduct was unlawful, nor did it establish that Mr. Toirov knew he was an alien or that he willfully trespassed. *See United States v. Nunez-Soberanis*, 406 F.Supp.3d 835, 842-45 (S.D. Ca. 2019) (holding that "[t]here is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325).

Curiously, the Government acknowledges that improper entry and § 797 do not share an identical *mens rea*. Gov.Br.12, fn.5. The Government correctly notes that improper entry simply requires the "intent to enter the United States, but not knowledge of unlawfulness." *Id*. Without analysis, the Government equates intentionally entering the United States with having a bad purpose and pronounces, without citation, that "[v]irtually all aliens who enter the [NDA] are not 'engaged in apparently innocent conduct.'" *Id*. at 12.

The same analysis applies to § 1382. It cannot be disputed that § 1382 requires a person act with the "purpose" of committing a violation of law. However, an improper entry conviction does not establish that Mr. Toirov knew he was an undocumented alien at the time he entered the United States, that he knew was required to enter at a port of entry, or that he was entering for an illegal purpose. *See Nunez-Soberanis*, 406 F.Supp.3d at 842-45 (holding that "[t]here is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325).

At a bare minimum, the purposeful requirement of § 1382 requires the Government to prove an additional element beyond that required in an improper entry case: that Mr. Toirov knew he was not allowed to enter the United States somewhere other than a port of entry. Absent such evidence, a conviction under § 1325 cannot alone furnish probable cause for the purposeful *mens rea* required to commit an offense under § 1382.

Moreover, Mr. Toirov completed the crime of improper entry before allegedly violating both NDA statutes. *See Arizona v. United States*, 567 U.S. at 407 ("As a general rule, it is not a crime for a

removable alien to remain in the United States."); 8 U.S.C § 1302 (requiring that aliens register *within 30 days of entry* into the United States) (emphasis added); *see also United States v. Gaspar-Miguel*, 947 F.3d 632, 634 (10th Cir. 2020)(noting that courts and the Board of Immigration Appeals have continued to interpret "enter," in a variety of contexts, as completed once an individual is "free from official restraint.").

Because Mr. Toirov's unlawful entry was complete at the moment of entry in this case, Mr. Toirov's presence on an alleged military instillation is not undertaken for the "purpose" of committing an additional criminal offense. Stated differently, because the offense of improper entry is completed at the point of entry, the Government must prove that Mr. Toirov possessed the subjective intent to commit an additional, inchoate, violation while present on the NDA.

Even if this Court is persuaded a conviction for improper entry *could* satisfy the *mens rea* requirements of one or both NDA charges with additional facts, there is no information in this record that supports a determination that Mr. Toirov admitted elements beyond the

bare elements to establish an improper entry at his change of plea hearing.

There is simply no support for the Government's repeated statements that the improper entry itself is proof Mr. Toirov knew his conduct was unlawful or that he entered the United States for a bad purpose, when neither of those alleged facts were admitted by Mr. Toirov and neither are elements of an improper entry.[7] *See* A1.3-4 (docket entry for change of plea hearing stating, in relevant part: "Guilty Plea entered to Count 1 only. Defense counsel proffers for time served sentence. Government has no objection to time served sentence."). On this record, Mr. Toirov's improper entry conviction has no bearing on the strength of the Government's case on the remaining NDA charges.[8]

---

[7] The Government's brief alleges that, upon arrest, Mr. Toirov "admitted that he was a citizen of Uzbekistan and that he had just entered the country unlawfully." Gov.Br.3. This information is from a complaint the Chief Magistrate Judge dismissed and, further, completely uncredible as there is no indication any of the agents who encountered Mr. Toirov spoke his language.

[8] Mr. Toirov is unconvinced the Government can meet their burden as to even a basic element, like the boundaries of the NDA, as the Government failed to establish that element at the only NDA case to proceed to trial in the District of New Mexico. *See* Order Dismissing Counts 2 and 3 of the Information with Prejudice in a separate case,

## V. THE RULE OF LENITY SHOULD APPLY.

The Government submits that charging a general intent crime such as an improper entry also allows it to file the NDA charges with no additional evidence of Mr. Toirov's willfulness, knowledge of the status of the land, or evidence of the purpose for the entry. Even if this Court is persuaded this aberrant charging scheme is allowed, the rule of lenity should apply to the Government's proposed use of both statutes.

The rule of lenity "instructs courts to interpret ambiguous criminal statutes favorably to the accused." *Unites States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). While Mr. Toirov does not concede either statute is ambiguous, the Court could find attempts at statutory construction of both statutes leaves the Court without an answer and that the rule of lenity should apply, so that Mr. Toirov does not face an

---

*United States v. Luis Jesus Escobedo-Molina*, 2:25-cr-014390-MIS Doc. 23 at 15 (quoting the Chief Magistrate from audio of the only NDA case to proceed to trial in the District of New Mexico as stating that "the United States has come in here and put on not a single bit of evidence that allowed me to find that he even entered the National Defense Area, based on the witnesses I heard. And obviously I'm going to be granting directed verdict on Counts 2 and 3[.]" and further quoting the Chief Magistrate as stating that the Government's conduct was "very, very disturbing"); *see also C.I.R.*, 243 F.3d at 1258 n. 8 (explaining that this can take judicial notice of documents and docket materials filed in other courts).

additional 18 months of prison exposure based solely on his guilty plea to improper entry. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, ... we can make no more than a guess as to what Congress intended.") (internal quotations omitted; ellipses in the original); *see also* 50 U.S.C. § 797(a)(1) (setting a maximum sentence of up to up to one year of incarceration); 18 U.S.C. § 1382 (setting a maximum sentence of up to six months of incarceration).

## CONCLUSION

The Government concedes there is no evidence Mr. Toirov knowingly entered an NDA. And Mr. Toirov's conviction for improper entry has no bearing on the *mens rea* requirements of the NDA charges. The Government did the right thing by moving to dismiss charges it could not prove, and the district court did not abuse its discretion when it granted the Government's motion to dismiss.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Toirov requests oral argument to allow members of the Court the chance to ask questions and clarify the appropriate standard of

review to determine whether it is necessary to reach the Government's arguments as to the *mens rea* of the NDA charges.

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
506 S. Main Street, Suite 401
Las Cruces, NM 88001
(575) 527-6930
amanda_skinner@fd.org

s/Amanda Skinner
Amanda Skinner
Assistant Federal Public Defender
Attorney for Appellee Komiljon Toirov

**CERTIFICATE OF COMPLAINCE WITH RULE 32(A)**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). It is printed in Century Schoolbook, a proportionately spaced font, and includes 4894 words, excluding items enumerated in Rule 32(f). I relied on my word processor to obtain the word count.

*/s/ Amanda Skinner*
Amanda Skinner
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on October 23, 2026, and that seven photocopies of the foregoing brief will be sent by Federal Express to the United States Court of Appeals for the Tenth Circuit, Office of the Clerk, located at the Byron White United States Courthouse, 1823 Stout Street, Denver, Colorado, 80257, following notification that the electronic brief is compliant.

I ALSO CERTIFY that Assistant United States Attorney Emil Kiehne, attorney for Appellant, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Amanda Skinner*
Amanda Skinner
Assistant Federal Public Defender